UNITED STATES of America,
Plaintiff–Appellee,

v.

Arturo Daniel VELASCO–HEREDIA,
aka Arturo Velasco–Heredia,
Defendant–Appellant.

No. 00–50107.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 2001

Filed May 10, 2001

Debra Ann DiIorio, DiIorio and Hall, APC, San Diego, California, for the defendant-appellant.

Roger W. Haines, Jr., United States Attorney's Office, San Diego, California, for the plaintiff-appellee.

Before: TROTT, THOMAS, and BERZON, Circuit Judges.

TROTT, Circuit Judge:

This case requires us to assess once again the effect of *Apprendi v. New Jersey*, 530 U.S. 466, 488, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000) on the federal drug statutes. 21 U.S.C. § 841 *et seq.* (West 2000). Specifically, we must consider whether the district judge erred by employing the preponderance of evidence standard of proof to determine the amount of marijuana attributable to Defendant–Appellant Arturo Velasco–Heredia ("Velasco–Heredia"), and, if the judge did err, whether the error was harmless.

We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and for the reasons explained below, we vacate Velasco–Heredia's sentence and remand the case to the district court for further proceedings.

## I

### Background

#### A. Factual History

During the last few weeks of May, 1999, the United States Customs Service ("Customs") conducted surveillance of a suspected marijuana "stash house" at 614 Alice Street in San Diego, California. One of the vehicles spotted at the 614 Alice Street home was a Mitsubishi pickup truck registered to Arturo Velasco–Heredia. On June 4, 1999, Velasco–Heredia drove this pickup from Mexico into the United States at the San Ysidro, California Port of Entry. Customs inspectors searched the vehicle and found a large amount of marijuana hidden inside. However, they did not alert Velasco–Heredia to their find, and instead let him proceed into the United States in order to follow him. When Velasco–Heredia realized that he was being followed, he undertook maneuvers in an attempt to lose his "tail," at which point

the Customs officers stopped and arrested him. Customs officers recovered approximately seventeen kilograms (17 kg) of marijuana in the pickup.

Around the same time, other Customs officers approached the suspected marijuana stash house at 614 Alice Street in San Diego. Two people, Jesus Hermosillo ("Hermosillo") and Arcelia Castro ("Castro"), were present. Hermosillo claimed to own the 614 Alice Street home and consented to a search of it and of an adjoining storage shed. Agents found various items of evidence suggesting marijuana use and distribution, the most important to this case being 66.1 pounds of "marijuana wrappings."

Hermosillo and Castro waived their *Miranda* rights and answered agents' questions. Both admitted that a drug smuggling and distribution operation existed, that the 614 Alice Street stash house was a drop-off point for the drugs, and that a man named Javier Gomez–Sandoval ("Gomez–Sandoval") directed the operation. Further, both Hermosillo and Castro implicated Velasco–Heredia in the smuggling operation. Hermosillo explained that "Velasco has delivered most of the marijuana," and Castro stated that she had seen Velasco–Heredia and his Mitsubishi truck at the stash house on at least four occasions during the past month.

Customs agents also stopped a man walking away from the stash house. The agents identified him as Javier Gomez–Sandoval, the man Hermosillo and Castro had fingered as the ringleader of the drug operation. After the agents advised Gomez–Sandoval of his *Miranda* rights, he stated that he wanted an attorney present during questioning.

## B. Procedural History

All four persons—Gomez–Sandoval, Hermosillo, Castro, and Velasco–Heredia—were arrested and charged in a four count indictment with conspiracy and substantive marijuana violations. Gomez–Sandoval was released on bond, failed to appear, and remains a fugitive. Castro pled guilty to misprision of a felony and was sentenced to fifteen months in prison. Hermosillo pled guilty to Count Three of the indictment, which charged conspiracy, and was sentenced to sixty months in prison.

Velasco–Heredia initially pled guilty to Count 3, the conspiracy count, as well. During the guilty plea colloquy, defense counsel and the prosecutor vehemently disagreed about the amount of drugs attributable to Velasco–Heredia as a co-conspirator. According to the defense, Velasco–Heredia was responsible only for the seventeen kilograms of marijuana found in his truck when he was arrested. According to the government, Velasco–Heredia was responsible for more than 285 kilograms of marijuana.[1] The district judge informed Velasco–Heredia that he could plead guilty to conspiracy to distribute marijuana, and that she would determine the amount of marijuana attributable to him during the sentencing phase. He pled guilty.

Soon thereafter, the United States Supreme Court decided *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In *Jones*, the Court stated in a footnote that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be

---

1. This figure was derived as follows: (1) the 66.1 pounds of marijuana wrappings recovered from the stash house would enclose approximately 269 kilograms of marijuana; and (2) 17 kilograms of marijuana was found in Velasco–Heredia's pickup truck. Adding these amounts together, the government argued that Velasco–Heredia was responsible for over 285 kilograms of marijuana.

charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 243 n. 6, 119 S.Ct. 1215. Armed with the *Jones* footnote, Velasco–Heredia went back to the district court and argued that the government must prove the quantity of drugs attributable to him beyond a reasonable doubt, not merely by a preponderance of evidence. Judge Gonzalez disagreed with Velasco–Heredia that *Jones* required her to find the amount of drugs beyond a reasonable doubt, but in an admirable display of attention and caution, allowed Velasco–Heredia to withdraw his guilty plea in order to better preserve his argument for appeal.

 The parties proceeded with a bench trial and submitted stipulated facts.[2] In the stipulation, Velasco–Heredia admitted that he had agreed with another person to pick up seventeen kilograms of marijuana in Mexico, drive the drugs into the United States, and leave them at an unspecified location to be retrieved by another person. After the stipulation was presented, Velasco–Heredia made a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29 ("Rule 29") claiming that the government failed to prove the quantity of drugs for which he was responsible. *See* FED. R. CRIM. P. 29. Judge Gonzalez denied the Rule 29 motion, finding that quantity of drugs is "not an element of the [off]fense of conspiracy, that the elements are the agreement and knowingly participating in the agreement and knowing the object of the agreement or conspiracy." She concluded that the government had proved these elements of conspiracy—not including quantity of drugs—beyond a reasonable doubt. Accordingly, Judge Gonzalez found Velasco–Heredia guilty of one count of conspiring to distribute marijuana in violation of 21 U.S.C. §§ 841(a) and 846.

The sentencing phase occurred immediately after the bench trial. During sentencing, Judge Gonzalez, employing the preponderance of evidence standard, determined that Velasco–Heredia was responsible for 285 kilograms of marijuana. Because Velasco–Heredia was responsible for between 100 kg and 1000 kg of marijuana, he was subject to the penalty provisions of 21 U.S.C. § 841(b)(1)(B), including the statutory minimums of sixty months in prison and four years of supervised release. 21 U.S.C. § 841(b)(1)(B). Judge Gonzalez acknowledged that her calculations under the United States Sentencing Guidelines ("U.S.S.G.") produced a sentencing range between thirty-seven to forty-six months. However, because the high end of that guideline range (forty-six months) was below the statutory minimum of sixty months prescribed by 21 U.S.C. § 841(b)(1)(B), the statutory minimum trumped the guidelines. *See* U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."). Accordingly, Judge Gonzalez sentenced Velasco–Heredia to the statutory minimum sentence of sixty months in prison followed by four years of supervised release. 21 U.S.C. § 841(b)(1)(B).

## II

## Discussion

**A. The District Judge Did Not Anticipate *Apprendi* When She Determined the Quantity of Drugs Attributable to Velasco–Heredia By a Preponderance of the Evidence.**

At the time of Velasco–Heredia's bench trial, Ninth Circuit precedent clearly held

---

**2.** In a bench trial, the judge sits in the shoes of the jury. *See United States v. Atkinson,* 990 F.2d 501, 503 (9th Cir.1993) (en banc).

that drug quantity was not an element of conspiracy to distribute marijuana and could be proven by a preponderance of the evidence. *See e.g., United States v. Sotelo–Rivera,* 931 F.2d 1317, 1319 (9th Cir. 1991), *overruled by United States v. Nordby,* 225 F.3d 1053 (9th Cir.2000). *Apprendi* had not yet been decided. 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Therefore, Judge Gonzalez's use of the preponderance standard to determine the amount of drugs attributable to Velasco–Heredia is completely understandable.

However, first *Jones,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215, and then *Apprendi,* 120 S.Ct. at 2362–63, cast a cloud over this precedent by stating: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 120 S.Ct. at 2362–63. Obviously, these cases raised a question as to whether drug quantity is a fact that the government must prove beyond a reasonable doubt.

We answered this question affirmatively in *United States v. Nordby,* 225 F.3d 1053, 1058 (9th Cir.2000). In *Nordby,* we overruled *Sotelo–Rivera,* and held for the first time that because the determination of drug quantity could increase the maximum penalty to which a defendant is subject, it is the type of fact that the government must prove beyond a reasonable doubt. *Id.* We have since affirmed this holding on several occasions. *See e.g., United States v. Garcia–Guizar,* 234 F.3d 483, 488 (9th Cir.2000); *United States v. Scheele,* 231 F.3d 492, 497 (9th Cir.2000).

■ Because Velasco–Heredia's case comes to us on direct review, he is entitled to the benefit of the holdings of *Jones, Apprendi,* and *Nordby. Nordby,* 225 F.3d at 1059 (citing *Griffith v. Kentucky,* 479

U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)).

■ With the benefit of hindsight and cases like *Nordby* to inform our *de novo* review, *see id.* at 1058–59, we conclude that Judge Gonzalez erred by determining the amount of drugs attributable to Velasco–Heredia under the preponderance of evidence standard. In the stipulation, Velasco–Heredia admitted to conspiring to distribute seventeen kilograms of marijuana. This amount of marijuana subjected Velasco–Heredia to a maximum potential sentence of five years in prison. 21 U.S.C. § 841(b)(1)(D) (where defendant is found responsible for less than fifty kilograms of marijuana "such person shall ... be sentenced to a term of imprisonment of not more than 5 years"). However, Judge Gonzalez, using the preponderance standard, found Velasco–Heredia to be responsible for 285 kilograms of marijuana. This finding subjected Velasco–Heredia to a more severe maximum potential punishment of forty years in prison. 21 U.S.C. § 841(b)(1)(B) (where defendant is found to be responsible for between 100kg and 1000kg of marijuana, "such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years"). Thus, Judge Gonzalez's finding as to quantity of drugs, made under the preponderance of evidence standard, increased the statutory maximum penalty for Velasco–Heredia's crime from five years to forty years. These circumstances do not conform to the rule expressed in *Apprendi. See Nordby,* 225 F.3d at 1058.

Contrary to the government's arguments in its brief and at oral argument, this case is not governed by *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). In *McMillan,* the Supreme Court considered Pennsylvania's Mandatory Minimum Sentencing Act

("MMSA"). The MMSA provided that anyone convicted of certain enumerated felonies would be subject to a mandatory minimum sentence of five years if the judge found, by a preponderance of evidence, that the defendant visibly possessed a firearm during the commission of the offense. *Id.* at 81, 106 S.Ct. 2411. Critically, under the MMSA, the judge's determination that the defendant visibly possessed a firearm did not increase the maximum punishment to which the defendant was subject under any of the enumerated felony statutes. *Id.* Rather, a finding of visible possession of a firearm merely "limit[ed] the sentencing court's discretion in selecting a penalty within the range already available to it...." *Id.* at 88, 106 S.Ct. 2411. The Court found this scheme constitutionally permissible because it only "operates to divest the judge of discretion to impose any sentence of less than five years for the underlying felony; it does not authorize a sentence in excess of that otherwise allowed for that offense." *Id.* at 81–82, 106 S.Ct. 2411.

The federal drug statute operates differently than the MMSA. *See* 21 U.S.C. § 841 *et seq.* Unlike a finding of visible firearm possession under the MMSA, a finding of drug quantity increases the statutory maximum punishment to which a defendant is subject. *See* 21 U.S.C. § 841(b)(1)(A)-(D). Indeed, the instant case starkly demonstrates how the finding of drug quantity can increase the potential statutory maximum punishment—Judge Gonzalez's determination that Velasco–Heredia was responsible for 285 kilograms of marijuana, instead of only seventeen kilograms, increased the statutory maximum punishment from five to forty years. *Compare* 21 U.S.C. § 841(b)(1)(D) (five years) *with* 21 U.S.C. § 841(b)(1)(B) (forty years).

Because Judge Gonzalez's finding as to drug quantity exposed Velasco–Heredia to a greater statutory maximum punishment, and did not merely limit her sentencing discretion within a range available under the facts found beyond a reasonable doubt, this case falls squarely under the rubric of *Apprendi,* not *McMillan.* *See Garcia–Guizar,* 234 F.3d at 488 ("[T]he judge's finding, made under a preponderance-of-the-evidence standard, increased the statutory maximum penalty to which [the defendant] was exposed from twenty years to life, in violation of the constitutional rule recognized by *Apprendi.*"); *Nordby,* 225 F.3d at 1059 ("[T]he judge's finding, made under a preponderance standard, increased the statutory maximum penalty for [the defendant's] crime from five years to life.").

**B. The Error Was Not Harmless Because Velasco–Heredia's Actual Sentence Exceeded the Statutory Maximum Prescribed by the Statute Under Which He Was Convicted.**

■ Because Velasco–Heredia properly preserved his *Jones/Apprendi* claim for appeal, "his sentence cannot stand unless the district court's constitutional *Apprendi* error was harmless beyond a reasonable doubt." *See Garcia–Guizar,* 234 F.3d at 488 (citing *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

The government claims that the district court's error was harmless because Velasco–Heredia's actual sentence did not exceed the statutory maximum prescribed by the statute under which he was convicted. We respectfully disagree.

As mentioned above, Velasco–Heredia admitted to conspiring to distribute seventeen kilograms of marijuana. With that amount of marijuana, Velasco–Heredia could have been sentenced to five years in prison. *See* 21 U.S.C. § 841(b)(1)(D). The government emphasizes that Velasco–

Heredia was actually sentenced to five years in prison, and therefore concludes that his sentence did not exceed the statutory maximum for the offense of which he was convicted.

The government's observation, while true, overlooks a separate aspect of Velasco–Heredia's sentence. "[S]upervised release, although imposed in addition to the period of incarceration, is 'a part of the sentence.'" *United States v. Soto–Olivas,* 44 F.3d 788, 790 (9th Cir.1995) (citation omitted). As explained below, Velasco–Heredia was sentenced to a term of supervised release in excess of the maximum authorized by statute.

Conspiracy to distribute seventeen kilograms of marijuana is a "Class D" felony. *See* 18 U.S.C. § 3559(a)(4) ("Class D" felonies are those where maximum term of imprisonment is "less than ten years but five or more years"); 21 U.S.C. § 841(b)(1)(D) (for possessing less than fifty kilograms of marijuana, the statutory maximum prison term is five years). "Class D" felonies authorize a maximum supervised release term of three years. *See* 18 U.S.C. § 3583(b)(2). Consequently, the statutory maximum of supervised release to which Velasco–Heredia could be sentenced was three years.[3]

Velasco–Heredia's actual sentence of four years' supervised release exceeded the three year statutory maximum to which he was subject. Indeed, the government concedes as much in its brief: Velasco–Heredia's "four-year term [of supervised release] is outside the three-year maximum authorized by 18 U.S.C. § 3583 for Class D felonies." Brief for Appellee United States at 17. Therefore, the judge's *Apprendi* error was not harmless. *See Nordby,* 225 F.3d at 1061.

## C. Procedure on Remand.

■ Because the judge's *Apprendi* error was not harmless, we must vacate Velasco–Heredia's sentence. The question then arises as to the appropriate procedure on remand. In *Nordby,* we stated:

> In comparable cases in which the jury's finding did not support the sentence, and where the conviction as well as the sentence was on appeal, we have allowed the government a brief period of time to elect whether it accepts a resentencing of the defendant to the lesser term permitted by the jury's findings. If the government so elects, the conviction is affirmed and resentencing takes place subject to the lower maximum sentence. If the government does not so elect, a new trial is ordered.

*Nordby,* 225 F.3d at 1062. Accordingly, we afford the government the option of (1) accepting a resentencing to a lesser term as provided by 21 U.S.C. § 841(b)(1)(D) and 18 U.S.C. § 3583(b)(2); or (2) providing Velasco–Heredia a new trial on the issue of quantity.

If the government elects the former option, Velasco–Heredia's conviction is affirmed, and resentencing should take place subject to the lower statutory maximums

---

**3.** We are cognizant that 21 U.S.C. § 841(b)(1)(D) includes its own provisions for supervised release, wholly separate from 18 U.S.C. § 3583(b)(2). *See* 21 U.S.C. § 841(b)(1)(D). In particular, under § 841(b)(1)(D), if a defendant has a prior felony drug conviction, he must be sentenced to at least 4 years' supervised release; if a defendant has no prior felony drug conviction, he must be sentenced to at least 2 years' super-

vised release. *Id.* Velasco–Heredia does not have a prior felony drug conviction. *See* Presentence Report at 7 (showing that Velasco–Heredia's only prior conviction is for misdemeanor petty theft). Thus, he is subject to 21 U.S.C. § 841(b)(1)(D)'s statutory *minimum* of two years' supervised release, as well as 18 U.S.C. § 3583(b)(2)'s statutory *maximum* of three years' supervised release.

of 21 U.S.C. § 841(b)(1)(D) and 18 U.S.C. § 3583(b)(2). We additionally point out that 21 U.S.C. § 841(b)(1)(D) provides no statutory minimum term of imprisonment, and therefore, Judge Gonzalez would not be required to resentence Velasco–Heredia to sixty months in prison, as she was compelled to do after she found him responsible for 285 kilograms of marijuana. *See* 21 U.S.C. § 841(b)(1)(B).

VACATED AND REMANDED.