**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Shannon Wayne TIGHE, Defendant–
Appellant.**

**No. 00–30263.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 2001

Filed Sept. 24, 2001

Michael Donahoe, Assistant Federal Defender, Helena, Montana, for the defendant-appellant.

Bernard F. Hubley, Assistant United States Attorney, Helena, Montana, for the plaintiff-appellee.

Before: B. FLETCHER, BRUNETTI and FISHER, Circuit Judges.

FISHER, Circuit Judge:

## OVERVIEW

This case is before us to review the legality of Tighe's sentence, imposed pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which mandates a minimum sentence of 15 years for any person who violates the felon-in-possession statute, 18 U.S.C. § 922(g), and who has three previous convictions for violent felonies or serious drug offenses. Tighe claims that his sentence cannot stand because ACCA is unconstitutional in light of the Supreme Court's recent decision in *Apprendi v. New Jersey,* and because two of the prior offenses upon which the district court relied as predicate offenses were improperly counted as such. Although we reject Tighe's claim that ACCA is facially unconstitutional, as well as his claim that his third degree burglary conviction was not a "violent felony" under ACCA, we agree that the district court violated *Apprendi* in counting as a predicate offense Tighe's previous juvenile adju-

dication. Accordingly, we vacate Tighe's sentence and remand for resentencing.

## BACKGROUND

On April 20, 2000, Tighe pled guilty to three counts of a three-count indictment charging him with bank robbery in violation of 18 U.S.C. § 2113(a) and (d) (Count I), being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(4) (Count II) and interstate transportation of a stolen vehicle in violation of 18 U.S.C. § 2312 (Count III). The indictment did not state that if he was found to be an armed career criminal, he would receive a minimum sentence of at least 15 years.[1] During the Rule 11 plea colloquy, the district court informed Tighe that if he had three prior convictions for a violent felony he would receive a sentence of not less than 15 years. In the Presentence Report ("PSR"), the Probation Office concluded that the ACCA sentencing enhancement should be applied to Tighe, and set forth five previous incidents of violent conduct. Tighe submitted objections to the PSR, including objections to whether or not his convictions qualified him for the enhancement. In a sentencing memo, Tighe also objected on the ground that *Apprendi* required that the three felony predicates be proven before a jury by a beyond-a-reasonable-doubt standard of proof.

At sentencing on August 28, 2000, the district court determined, over Tighe's objection, that he should be sentenced pursuant to U.S.S.G. § 4B1.4(b)(3)(B), which implements ACCA. The district court rejected Tighe's *Apprendi* objection. As for the three prior felonies required to trigger the armed career criminal enhancement, the district court first relied upon a 1993

Wyoming armed robbery conviction, which was agreed upon by both parties. The court then found that a 1988 Oregon juvenile adjudication of a charge of reckless endangerment and first-degree robbery and unauthorized use of a motor vehicle counted as a prior conviction. Finally, the district court found that a 1992 South Dakota burglary conviction fell squarely within the "*Taylor* heartland of burglary offenses" and therefore counted as the third conviction necessary to apply the enhancement. Having found three countable convictions, the district court sustained Tighe's objection to a 1993 South Dakota grand theft conviction "in the interest of judicial economy." The court sentenced Tighe to 235–months imprisonment for Count I, 180 months for Count II and 120 months for Count III, all sentences to run concurrently. He timely appeals his sentence.

## STANDARD OF REVIEW

 The legality of a sentence is reviewed de novo. *United States v. Murphy*, 65 F.3d 758, 762 (9th Cir.1995). The constitutionality of a statutory provision is reviewed de novo. *Taylor v. United States*, 143 F.3d 1178, 1179 (9th Cir.1998). Whether a conviction is a predicate felony under section 924(e) is reviewed de novo. *United States v. Bonat*, 106 F.3d 1472, 1474 (9th Cir.1997).

## DISCUSSION

**I. Constitutional Challenges to Tighe's Sentence under ACCA**

Tighe brings both facial and as-applied constitutional challenges to his sentences

---

**1.** Although the government claims in its brief that the indictment indicated that Tighe was notified of the applicability of ACCA, the indictment makes no such reference to ACCA or its applicable minimum sentences.

under ACCA. We address each challenge in turn.

### A. *Facial Challenge*

■ The Armed Career Criminal Act, 18 U.S.C. § 924(e), mandates a minimum sentence of 15 years for anyone convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) who is found to have three previous convictions for a violent felony or a serious drug offense. 18 U.S.C. § 924(e)(1); *United States v. McElyea*, 158 F.3d 1016, 1018 (9th Cir.1998). A defendant convicted of being a felon in possession of a firearm who has not been previously convicted of three violent felonies or serious drug offenses can be sentenced only to a maximum of 10 years. 18 U.S.C. § 924(a)(2). Tighe challenges ACCA on its face on the ground that it "allows for a substantial increase in [the] statutory maximum [sentence] based on prior convictions, the existence of which need only be proved to the judge by a preponderance of the evidence." He argues that under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the fact of his prior convictions must be proved to a jury beyond a reasonable doubt.

Under the current state of the law, the Constitution does not require prior convictions that increase a statutory penalty to be charged in the indictment and proved before a jury beyond a reasonable doubt. *United States v. Pacheco–Zepeda*, 234 F.3d 411, 413–14 (9th Cir.2001) ("The district court was entitled to consider any prior aggravated felony convictions in sentencing Pacheco–Zepeda for illegal reentry even though such conduct had not ·been charged in the indictment, presented to a jury, and proved beyond a reasonable doubt."); *see also Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)); *Almendarez–Torres v. United States*, 523 U.S. 224, 243–44, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). Accordingly, we affirm the district court's holding that ACCA is constitutional on its face.

### B. *As–Applied Challenge*

■ Tighe argues that his sentence is unconstitutional because it was increased beyond the statutory maximum 10 years by the district court's finding that he was adjudicated a juvenile delinquent for committing a violent felony when he was 14–years old. He argues that *Apprendi* requires that the fact of his juvenile adjudication be charged in an indictment and found by a jury beyond a reasonable doubt.

One of the three predicate felonies used by the district court to enhance Tighe's sentence was a 1988 Oregon juvenile adjudication for reckless endangerment, robbery and unauthorized use of a motor vehicle. As a juvenile, Tighe was not afforded the right to a jury trial during the juvenile proceedings under either state or federal law. *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (concluding that, in a juvenile delinquency adjudication, trial by jury is not a constitutional requirement); *State v. Reynolds*, 317 Or. 560, 857 P.2d 842 (1993). Despite the lack of a jury trial and certain other procedural protections in the context of most juvenile proceedings, however, Congress has declared that juvenile delinquency adjudications involving violent felonies may nonetheless qualify as predicate "convictions" under ACCA. 18 U.S.C. § 924(e)(2)(C).

This is not the first time we have addressed the constitutionality of nonjury ju-

venile adjudications as sentencing enhancements. In *United States v. Williams*, 891 F.2d 212 (9th Cir.1989), a pre-*Apprendi* case, we held that a sentencing judge's use of a prior, nonjury juvenile adjudication to enhance a defendant's sentence under the sentencing guidelines did not violate due process. Contrary to the government's assertion, however, *Williams* is not dispositive of the issue presently before us, because the nature of the sentencing decision reviewed in that case was fundamentally different from the sentencing decision Tighe now challenges. Although *Williams* addressed the use of prior juvenile adjudications to enhance a defendant's sentence, the defendant's ultimate sentence in that case was *within* the statutorily mandated range for the offense of conviction. In other words, William's prior juvenile adjudications were not used to increase the statutorily mandated maximum punishment to which he was exposed.[2]

In contrast, under ACCA the fact of Tighe's prior juvenile adjudication was used to increase his statutorily mandated maximum punishment from not more than 10 years, under 18 U.S.C. § 924(a)(2), to at least 15 years. A fact that is used to increase the maximum statutory penalty to which a defendant is exposed raises an entirely different set of constitutional concerns than a fact that merely affects where a sentence is fixed within an undisputed statutorily mandated range. *See United States v. Moss*, 252 F.3d 993 (8th Cir.2001). Accordingly, because Tighe challenges the use of his prior juvenile adjudications to raise his statutory maximum punishment, *Williams* does not answer the question of whether the district court's use of such adjudications was constitutional.

As discussed in the preceding section addressing Tighe's facial challenge to ACCA, the Supreme Court has held that *"other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added); *see also Jones*, 526 U.S. at 243, n. 6, 119 S.Ct. 1215. Thus, the Supreme Court has held that prior convictions are exempt from *Apprendi*'s general rule and, as sentencing factors, need not be afforded the same procedural protections that attach to facts that are construed as elements of the charged crime.[3]

At first blush, it may appear that Tighe's 1988 juvenile adjudication, which Congress has characterized as a "prior conviction" for the purposes of ACCA, falls precisely within *Apprendi*'s exception for "the fact of a prior conviction," thus foreclosing Tighe's argument that the use of that adjudication at sentencing to increase his maximum penalty violated *Apprendi*. Such an analysis, however, ignores the significant constitutional differences between

---

**2.** In *Williams*, the statute under which the defendant was convicted, 18 U.S.C. § 2113(a), set the statutory maximum punishment at not more than 20 years incarceration. The defendant in that case was ultimately sentenced to 57 months, which was well below the statutory maximum.

**3.** It should be noted that several states' recidivism statutes treat prior convictions as elements of a crime or provide for a jury determination of the fact of a prior conviction. *See*

*Almendarez–Torres*, 523 U.S. at 246, 118 S.Ct. 1219 (noting that some states treat prior convictions as elements of the related crime and submit the fact of a prior conviction to a jury); *see generally Spencer v. Texas*, 385 U.S. 554, 566–67, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) (describing various states' procedures for proving prior convictions); *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962) (examining West Virginia's procedure for proving prior convictions).

adult convictions and juvenile adjudications. *Compare McKeiver, supra, with Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (holding that the right of trial by jury is a fundamental right applicable to the states). Neither *Apprendi,* nor *Almendarez–Torres*—the case upon which *Apprendi* relied to create the "prior conviction" exception to its general rule—specifically addressed the unique issues that distinguish juvenile adjudications from adult convictions, such as the lack of a right to a jury trial in most juvenile adjudications. Thus, neither case squarely tackles the question that Tighe's appeal now raises: do prior juvenile adjudications, which do not afford the right to a jury trial, fall within the "prior conviction" exception to *Apprendi*'s general rule that a fact used to increase a defendant's maximum penalty must be submitted to a jury and proved beyond a reasonable doubt? In order to answer this question, we must inquire into the scope of the term "conviction" as used by the Supreme Court in *Apprendi,* and the cases leading up to *Apprendi.*

In *Almendarez–Torres,* the case that first held prior convictions could be treated as sentencing factors that raise the maximum penalty of an offense, the Court addressed the constitutionality of a statutory provision that authorizes an increased prison sentence for aliens re-entering the United States after deportation if the alien was convicted of a prior aggravated felony. *Almendarez–Torres,* 523 U.S. at 229, 118 S.Ct. 1219. The defendant argued that the fact of his prior conviction, which was used to increase his statutorily mandated maximum punishment, was an element of his offense and should have been charged in the indictment. The Court rejected this argument, holding that the fact of the prior conviction was a sentencing factor, and not a separate element of the crime to be

charged in the indictment. *Id.* at 243, 118 S.Ct. 1219.

The next term, in *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Court considered *Almendarez–Torres'* holding regarding the use of prior convictions in the context of emerging concerns about the viability of using facts not charged in an indictment nor proved to a jury beyond a reasonable doubt to increase the statutory maximum penalty to which a defendant is exposed. The Court explained why the fact of prior convictions was constitutionally distinct from other sentence-enhancing facts, such that it was permissible, under *Almendarez–Torres,* to use prior convictions to increase the possible penalty for an offense without treating them as an element of the current offense: "One basis for that constitutional distinctiveness [of prior convictions] is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense ... *a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt and jury trial guarantees.*" *Jones,* 526 U.S. at 249, 119 S.Ct. 1215 (emphasis added). Thus, *Jones'* recognition of prior convictions as a constitutionally permissible sentencing factor was rooted in the concept that prior convictions have been, by their very nature, subject to the fundamental triumvirate of procedural protections intended to guarantee the reliability of criminal convictions: fair notice, reasonable doubt and the right to a jury trial.

One year later, in *Apprendi,* the Court further elaborated on the importance of such procedural protections being inherent in prior convictions used as sentencing factors to increase statutory penalties. The Court explained that "the certainty that procedural safeguards attached to the 'fact' of prior conviction" was crucial to

*Almendarez–Torres'* constitutional holding regarding prior convictions as sentencing factors. *Apprendi,* 530 U.S. at 488, 120 S.Ct. 2348. The Court identified the right to a jury trial as one of the requisite procedural safeguards to which it referred: "There is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof." *Apprendi,* 530 U.S. at 496, 120 S.Ct. 2348. The Court's continued acceptance of *Almendarez–Torres'* holding regarding prior convictions, then, was premised on sentence-enhancing prior convictions being the product of proceedings that afford crucial procedural protections—particularly the right to a jury trial and proof beyond a reasonable doubt.

Thus, as we read *Jones* and *Apprendi,* the "prior conviction" exception to *Apprendi's* general rule must be limited to prior convictions that were themselves obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt. Juvenile adjudications that do not afford the right to a jury trial and a beyond-a-reasonable-doubt burden of proof, therefore, do not fall within *Apprendi's* "prior conviction" exception.[4]

To the extent the government's argument can be construed as a request to extend *Apprendi's* "prior conviction" exception to include prior nonjury juvenile adjudications on the basis of *Almendarez–*

*Torres'* logic, we decline to do so. The *Apprendi* Court's serious reservations about the reasoning of *Almendarez–Torres* counsel against any extension of that opinion's holding:

> Even though it is arguable the *Almendarez–Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, Apprendi does not contest the decision's validity and we need not revisit it for purposes of our decision today to treat the case as a *narrow exception* to the general rule we recalled at the outset. Given its unique facts, it surely does not warrant rejection of the otherwise uniform course of decision during the entire history of our jurisprudence.

*Apprendi,* 530 U.S. at 489–90, 120 S.Ct. 2348 (emphasis added); *see also id.* at 487, 120 S.Ct. 2348 ("*Almendarez–Torres* represents at best an exceptional departure from the historic practice that we have described.") Although this Circuit recognized the continuing precedential value of *Almendarez–Torres* in *Pacheco–Zepeda,* 234 F.3d at 413–14, we conclude that, given the "unique facts" of *Almendarez–Torres,* its holding regarding prior convictions should remain a "narrow exception" to *Apprendi* that does not extend to nonjury juvenile adjudications.

In sum, we conclude *Apprendi's* narrow "prior conviction" exception is limited to prior convictions resulting from proceedings that afforded the procedural necessities of a jury trial and proof beyond a reasonable doubt.[5] Thus, the "prior con-

---

4. It does not matter to this analysis whether any state provides the right to a jury trial for juvenile adjudications. It is undisputed that Tighe was not provided a jury when he was adjudged a juvenile delinquent in Oregon or when he was sentenced as an armed career criminal in this case.

5. We acknowledge the concern that defendants might be prejudiced if their prior juvenile adjudications are presented to the jury, but we note that courts may fashion procedures to avoid putting such defendants to the "Hobson's choice" described by the dissent. The Court in *Spencer v. Texas,* 385 U.S. 554,

viction" exception does not include nonjury juvenile adjudications. Therefore, the district court violated *Apprendi* when, at sentencing, it increased Tighe's penalty beyond the prescribed statutory maximum based on an adjudication which denied Tighe the right to a jury trial. *See Apprendi*, 530 U.S. at 489, 120 S.Ct. 2348; *Jones*, 526 U.S. at 243 n. 6, 249, 119 S.Ct. 1215.

■ Because Tighe properly preserved his *Jones/Apprendi* claim for appeal, his sentence cannot stand unless the district court's constitutional error was harmless beyond a reasonable doubt. *United States v. Velasco–Heredia*, 249 F.3d 963, 968 (9th Cir.2001); *United States v. Garcia–Guizar*, 234 F.3d 483, 488 (9th Cir.2000). Because Tighe's sentence of 180 months for his violation of 18 U.S.C. § 922(g)(1) is in excess of the applicable statutory maximum (10 years) based upon the jury's findings, we hold this error is not harmless. *Id.*

■ We note that Tighe's sentence under Count I, the armed robbery offense, was also improperly affected by the inclusion of his juvenile adjudication as a predicate offense for ACCA. For sentencing purposes, the district court grouped Counts I and II. *See* U.S.S.G. § 3D1.1(a)(3). The court then determined that Tighe was an armed career offender because he was convicted of being a felon in possession with three prior violent felonies. It applied U.S.S.G. § 4B1.4 (b)(3)(A) and determined that Tighe's offense level was 31 (34 minus three points for an ac-

ceptance-of-responsibility adjustment) and that given his criminal history category, the sentencing range for Count I was 188–235 months. It sentenced him to the high end of that range, 235 months.

For § 4B1.4 to apply, however, the defendant must be subject "to an enhanced sentence under the provisions of [ACCA,] 18 U.S.C. § 924(e)." U.S.S.G. § 4B1.4(a). As we conclude above, Tighe could not be subjected to an enhanced sentence under ACCA; thus, he also was not subject to a sentence enhancement under U.S.S.G. § 4B1.4. Without that enhancement, Tighe's offense level would have been 29 and, given his criminal history category, the sentencing range for Count I would have been 151 to 188 months. Accordingly, Tighe's 235–month sentence under Count I was also improperly affected by the *Apprendi* violation. *Cf. United States v. Saya*, 247 F.3d 929, 942 (9th Cir.2001) (holding that *Apprendi* error resulted in a misapplication of the Sentencing Guidelines but that under the applicable plain error standard, no relief would be granted).[6]

## II. Tighe's *Taylor* Challenge to his South Dakota Burglary Conviction

Tighe also claims that his 1992 conviction for burglary fails to qualify as a predicate felony under ACCA because South Dakota's definition of burglary is too broad to constitute a "violent felony." We address this issue here because it may arise again on remand if the government at-

566–69, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), recognized that states, in implementing their recidivist statutes, could use various procedures to mitigate any prejudice to the defendant. Although the Court declined to require a two-stage jury trial constitutionally, *see id.* at 568, 87 S.Ct. 648, such a separation of the guilt and sentencing phases of the trial would address such potential prejudice.

6. Given our conclusion that the district court erred in counting Tighe's 1988 juvenile adjudication as a predicate offense under ACCA, we do not reach Tighe's remaining claims of error regarding the use of that adjudication.

tempts to resentence Tighe under ACCA. We hold that Tighe's South Dakota conviction can be counted as a predicate felony for ACCA purposes.

■ Although ACCA includes "burglary" among the enumerated violent felonies, 18 U.S.C. § 924(e)(2)(B)(ii), *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), nonetheless established that not all state burglary convictions should be considered predicate felonies under that Act. In deciding whether a prior burglary conviction constitutes a "burglary" for the purposes of ACCA, the sentencing court must determine whether the burglary statute at issue substantially corresponds to the "generic" definition of burglary. *Id.* at 600, 110 S.Ct. 2143; *United States v. Alvarez,* 972 F.2d 1000, 1005 (9th Cir.1992). To constitute generic burglary, a burglary statute must contain the following three elements: "[1] an unlawful or unprivileged entry into, or remaining in [2] a building or other structure, [3] with the intent to commit a crime." *Taylor,* 495 U.S. at 598, 110 S.Ct. 2143.

■ Tighe argues that South Dakota's third degree burglary statute, SDCL § 22–32–8, does not contain the necessary elements of generic burglary, because the South Dakota statute omits any reference to the required entry being unlawful or unprivileged. Accordingly, Tighe maintains that his 1992 burglary conviction was nongeneric and cannot constitute a predicate offense under ACCA.

In relevant part, SDCL §§ 22–32–8 provides:

Any person who enters an unoccupied structure, with intent to commit any crime other than the act of shoplifting or retail theft ... or remains in an unoccupied structure after forming the intent to commit any crime ... is guilty of third degree burglary.

Given the plain language of the statute, Tighe's assertion is technically correct, as there is no mention of the lawfulness of the entry. *Taylor* itself recognized that a state might omit this necessary element of generic burglary: "[a] few States' burglary statutes, however, ... define burglary more broadly, e.g. *by eliminating the requirement that the entry be unlawful.*" 495 U.S. at 599 (emphasis added). It would appear, therefore, that South Dakota's statutory definition of burglary falls outside the generic definition of burglary.

In *State v. Derby,* 462 N.W.2d 512, 513 (S.D.1990), however, the Supreme Court of South Dakota held that, although not explicitly stated in the statute, "unlawful or unauthorized entry into a structure [is] an element of third-degree burglary." The *Derby* decision's explicit inclusion of the element of "unlawful or unauthorized entry" brings the burglary statute under which Tighe was convicted squarely with the definition of generic burglary, as each of the three essential elements of generic burglary are actually required to obtain a conviction under the South Dakota Supreme Court's interpretation of South Dakota law. A state court's interpretation of a statute is binding in determining whether the elements of generic burglary are present. *Bonat,* 106 F.3d at 1475. Therefore, given the South Dakota court's interpretation of the burglary statute, the *Taylor* definition of generic burglary is satisfied and Tighe's prior South Dakota conviction for burglary was properly counted as a predicate violent felony under ACCA.

### III. Remand for Resentencing

Because we conclude that the district court erred by counting Tighe's 1988 juvenile adjudication as a predicate offense

under ACCA, we vacate Tighe's sentence and remand to the district court for resentencing. Tighe argues that at resentencing, the government should be precluded from arguing that his fourth prior conviction, a 1993 conviction for grand theft, qualifies as a predicate offense under ACCA. At his original sentencing, the government urged the district court to count this conviction as a predicate offense under ACCA. The district court, however, sustained Tighe's objection to the conviction "in the interest of judicial economy," because it had already determined that Tighe had the requisite three countable offenses. Despite sustaining the objection, however, the district court noted that it had not fully analyzed the conviction, which "could well qualify as a violent felony pursuant to 18 U.S.C. § 924(e)(2)."

█ Nonetheless, Tighe now argues that because the government failed to file a cross-appeal contesting the district court's grant of Tighe's objection to the use of that conviction as a predicate offense, it has waived any argument that the 1993 conviction qualifies as a predicate offense. We disagree. Failure to cross-appeal a sentencing error does not constitute a waiver of the right to contest that error at resentencing. *See United States v. Garcia–Guizar,* 234 F.3d 483, 490 (9th Cir.2000) ("[W]e reject [the defendant's] claim that the government waived its right to correct the error in the original sentence because it did not cross-appeal from the original sentence."). At resentencing, a district court is "free to review the entire sentencing calculus." *United States v. Caterino,* 29 F.3d 1390, 1394 (9th Cir.1994), *overruled on other grounds, Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995). Thus, at Tighe's re-

sentencing, the district court is free to consider whether Tighe's 1993 conviction for grand theft qualifies as a predicate offense under ACCA.

█ Finally, Tighe argues that if the district court is permitted to consider his 1993 grand theft conviction at resentencing, the government should be precluded from offering any additional evidence regarding that conviction. In support of this contention, Tighe relies on *United States v. Matthews,* 226 F.3d 1075 (9th Cir.2000). *Matthews* involved completely different facts.[7] There, the government patently failed to comply with evidentiary requirements at sentencing and wanted to re-open the record on remand to correct its error. Here, the government complied with its evidentiary burden during sentencing. Allowing the government to submit evidence at Tighe's resentencing hearing will therefore not constitute an impermissible "second bite at the apple" for the government. Accordingly, at Tighe's resentencing, the government may offer Tighe's 1993 grand theft conviction for consideration as a predicate offense under ACCA, and may, if necessary, submit additional documentation regarding that conviction.

## CONCLUSION

We conclude that ACCA's use of prior convictions as sentencing factors is proper under *Almendarez–Torres.* We also conclude that Tighe's 1992 South Dakota third degree burglary conviction was a generic burglary conviction that properly served as a predicate offense under ACCA. We hold, however, that the use of Tighe's 1988 nonjury juvenile delinquency adjudication to increase his maximum statutory penalty violated *Apprendi.* Accordingly, we va-

---

7. *Matthews* has been taken *en banc* and can no longer be cited as precedent. *See United States v. Matthews,* 254 F.3d 825 (9th Cir.

2001). If this case were not distinguishable from *Matthews,* we would delay our decision until that case was decided.

cate his sentence and remand for resentencing.

### VACATED AND REMANDED.

BRUNETTI, Circuit Judge, dissenting:

The majority reaches the unsupportable conclusion that a juvenile adjudication is not a "conviction" for sentencing enhancement purposes because, in essence, juveniles have no constitutional right to a trial by jury. I respectfully dissent from Part I.B of the opinion because it fails to recognize the full force of Supreme Court precedent, our case law, and congressional intent.

I begin with 18 U.S.C. § 922(g)(1), the relevant statute under which Tighe was convicted. That provision makes it unlawful for a prior felon to possess a firearm. When an individual violates the substantive crime set forth in section 922(g), he is subject to an enhanced penalty under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), if he has suffered three previous convictions for "a violent felony or a serious drug offense." Congress specifically included in section 924(e)'s definition of a countable conviction any "finding that a person has committed an act of juvenile delinquency involving a violent felony." *Id.* § 924(e)(2)(C).

This court has clearly held that section 924(e) is a penalty enhancement statute and does not create a new substantive federal crime. *United States v. Dunn*, 946 F.2d 615, 619 (9th Cir.1991) (citing *United States v. West*, 826 F.2d 909, 911 (9th Cir.1987)); *see also Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (referring repeatedly to § 924(e) as a "sentence enhancement provision"). We have further held that the fact of the predicate felony convictions required for a sentencing enhancement under section 924(e) need not be included in the indictment nor proved at trial. *Id.*

The judge may find the fact of the requisite predicate convictions at the sentencing hearing under a preponderance-of-the-evidence standard. *United States v. Phillips*, 149 F.3d 1026, 1033 (9th Cir.1998).

With this backdrop in mind, I turn to the facts of this case relevant to my concern. The district court determined at sentencing that Shannon Wayne Tighe had been convicted of at least three prior violent felonies, requiring an ACCA enhancement. One of these prior convictions is a 1988 Oregon juvenile adjudication for reckless endangerment, first-degree robbery, and unauthorized use of a motor vehicle. Over Tighe's constitutional objections, the district court included the Oregon juvenile adjudication as a countable felony under section 924(e) by relying, in great part, on our decision in *United States v. Williams*, 891 F.2d 212 (9th Cir.1985).

In *Williams*, the defendant contended that his due process rights were violated because his adult criminal sentence was enhanced due to prior juvenile adjudications for which he did not have a right to jury trial. *Id.* at 213. Relying on *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), in which the Supreme Court held that jury trials are not constitutionally required for juvenile adjudications, we allowed the juvenile conviction to support the sentence enhancement. We observed that while "juvenile delinquency proceedings must conform to the due process guarantees of the Constitution ... these due process guarantees do not include the right to a jury trial for delinquency adjudications." *Williams*, 891 F.2d at 214 (citations omitted). Thus, where a juvenile received all the process constitutionally due at the delinquency proceeding stage, we found the later use of the juvenile adjudication for an adult enhancement to be constitutionally sound because "the conviction was constitutionally valid for purposes of imposing a

sentence of imprisonment for the [juvenile] offense itself." *Id.* at 215. To hold otherwise would have required the court "to hold that the enhancement of an adult criminal sentence requires a higher level of due process protection than the imposition of a juvenile sentence"-a notion the court squarely rejected. *Id.*

Tighe's case should be straightforward under *Williams* because, as explained above, there is no constitutional problem with using a juvenile delinquency adjudication to support a sentencing enhancement. But the majority suggests that the Supreme Court's decisions in *Almendarez-Torres*, *Jones*, and *Apprendi* direct a different result than the one *Williams* demands. I disagree.

*Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) was a precursor to the Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348; *see also Jones*, 526 U.S. at 243 n. 6, 119 S.Ct. 1215. The "other than a fact of a prior conviction" language in *Apprendi* hearkens back to the Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).

*Almendarez-Torres* held that where a legislature crafts a penalty provision which simply authorizes a court to increase a sentence for a recidivist, the Constitution does not require the government to charge the fact of the prior conviction in the indictment. *Id.* at 226–227, 118 S.Ct. 1219. There, the Court examined whether a provision in an illegal re-entry statute, which raised the penalty for illegal re-entry from two to twenty (20) years based on recidi-

vism, was a sentencing factor or an element of the crime. In concluding that it was a sentencing factor, the Court rejected the argument that, because the fact of recidivism increased the maximum penalty to which a defendant was exposed, Congress was constitutionally required to treat recidivism as an element of the crime that must be charged in an indictment and proved beyond a reasonable doubt. *Id.* at 239, 118 S.Ct. 1219; *see also United States v. Pacheco–Zepeda*, 234 F.3d 411, 413–14 (9th Cir.2001) (explaining that *Almendarez-Torres* "stands for the proposition that not every fact expanding a penalty range must be stated in a felony indictment, the precise holding being that recidivism increasing the maximum penalty need not be so charged.") (citation and internal quotations omitted).

In *United States v. Pacheco–Zepeda*, we had occasion to address whether *Almendarez-Torres* remained good law after the Court in *Apprendi* expressed some concern over its continuing validity. *Pacheco–Zepeda*, 234 F.3d at 414. We observed that *Apprendi*

> reasoned that any due process or Sixth Amendment concerns—arising out of the judicial determination of a "fact" that increased punishment beyond the statutory maximum—were mitigated in *Almendarez-Torres* by "[b]oth the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that [the defendant] did not challenge the accuracy of that 'fact' in his case."

*Id.*

Thus, we found that the Court in *Apprendi* chose not to overrule *Almendarez-Torres*, and *unmistakably carved out an exception for "prior convictions"* that specifically preserved the holding of *Almendarez-Torres*. *Id.* (emphasis added).

The majority acknowledges, as it must, that *Almendarez-Torres* is still part of

"the current state of the law." However, it proceeds to make the tortured argument that prior juvenile adjudications, which do not afford the right to a jury trial, do not fall within the "prior conviction" exception to *Apprendi*'s general rule that a fact used to increase a defendant's maximum penalty must be submitted to a jury and proved beyond a reasonable doubt. The majority does so by relying on language in *Jones* (and later reiterated in *Apprendi*) that explains why it is constitutionally permissible to use prior convictions to increase the possible penalty for an offense without treating the fact of the convictions themselves as elements of the crime. I repeat the specific *Jones* language here:

> "One basis for that constitutional distinctiveness [of prior convictions] is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense ... a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt and jury trial guarantees."

Majority Opinion at 1193 (quoting *Jones*, 526 U.S. at 249, 119 S.Ct. 1215.)

The majority takes this language and makes the quantum leap to hold, in effect, that in order for a prior conviction to support a sentencing enhancement, it must have been "subject to the fundamental triumvirate of procedural protections intended to guarantee the reliability of criminal convictions: fair notice, reasonable doubt and the right to a jury trial." Majority Opinion at 1193. Because part of this so-called "fundamental triumvirate of procedural protections" is absent for juvenile adjudications, the majority takes juvenile adjudications out of the equation, even though Congress specifically made them part of it.

I do not believe the language plucked from *Jones* provides sufficient authority to overrule (albeit implicitly) this court's decision in *Williams*, nor do I think the majority's attempt to distinguish *Williams* is valid. In my view, the language in *Jones* stands for the basic proposition that Congress has the constitutional power to treat prior convictions as sentencing factors subject to a lesser standard of proof because the defendant presumably received all the process that was due when he was convicted of the predicate crime. For adults, this would indeed include the right to a jury trial. For juveniles, it does not. Extending *Jones'* logic to juvenile adjudications, when a juvenile receives all the process constitutionally due at the juvenile stage, there is no *constitutional* problem (on which *Apprendi* focused) in using that adjudication to support a later sentencing enhancement. Our decision in *Williams* recognizes just that.

The majority does not make clear how its decision today will work in practice, but it is obvious that it will be troublesome. If a juvenile adjudication (without the right to a jury trial) does not fall within the *Almendarez–Torres* exception, then, to comply with *Apprendi*, prosecutors will be required to prove the *fact* of the prior convictions to the jury in order to support the sentencing enhancement. While, as the majority notes, some states treat prior convictions as elements of the related crime and submit the fact of a prior conviction to a jury, it overlooks the fact that the Supreme Court has long recognized "that the introduction of evidence of a defendant's prior crimes risks significant prejudice." *Almendarez–Torres*, 523 U.S. at 235, 118 S.Ct. 1219 (citing *Spencer v. Texas*, 385 U.S. 554, 560, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967)); *see also United States v. Dunn*, 946 F.2d 615, 619–620 (9th Cir.1996) (commenting that including information regarding three prior violent felonies in the defendant's indictment "probably would have introduced an unacceptable level of prejudice into his trial"). Thus, a

defendant with a prior juvenile adjudication will be put to the Hobson's choice of stipulating to the priors or parading them before a jury. But, as *Almendarez–Torres* recognized, "[e]ven if a defendant's stipulation were to keep the name and details of the previous offense from the jury, ... jurors would still learn, from the indictment, the judge, or the prosecutor, that the defendant had committed [three violent felonies]." *Id.* at 235, 118 S.Ct. 1219 (citation omitted). This approach seems to wreak havoc on the very due process rights *Apprendi* sought to vindicate.

For these reasons, I respectfully dissent from Part I.B and the ultimate result, but concur in all other respects.