[No. C049018. Third Dist. Aug. 31, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
REX EVANS PALMER, Defendant and Appellant.

## COUNSEL

Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Mary Jo Graves, Assistant Attorneys General, Stephen G. Herndon and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—Defendant Rex Evans Palmer entered a negotiated plea of no contest to driving while having a blood-alcohol content of .08 percent or more (Veh. Code, § 23152, subd. (b); count II) and admitted two prior Nevada convictions for driving under the influence in exchange for dismissal of the remaining counts: driving under the influence (Veh. Code, § 23152, subd. (a); count I), felony child endangerment (Pen. Code, § 273a, subd. (a); count III), as well as dismissal of another prior Nevada conviction for driving while impaired.[1]

The court suspended imposition of sentence and granted summary probation for a term of five years subject to certain terms and conditions including 180 days in jail.

Defendant appeals. He obtained a certificate of probable cause (Pen. Code, § 1237.5) to challenge the use of his prior Nevada driving-under-the-influence convictions. He contends his prior Nevada convictions could not be used to enhance the punishment for his current California driving offense (Veh. Code, § 23546) because he did not have a right to a jury trial in the Nevada proceedings. We reject defendant's claim. Since there is no federal constitutional right to a jury trial for petty offenses, and defendant's Nevada priors

---

[1] Counts I and II were charged as felonies.

were for petty offenses, we conclude that defendant's sentence for the current offense was properly enhanced by those priors. In reaching this conclusion, we respectfully disagree with the split decision of the Court of Appeals for the Ninth Circuit in *U.S. v. Tighe* (9th Cir. 2001) 266 F.3d 1187 (*Tighe*).

## PROCEDURAL HISTORY

A complaint filed July 16, 2002, charged defendant with two driving-under-the-influence-of-alcohol offenses and felony child endangerment. In connection with the driving offenses, it was alleged that defendant had three prior Nevada driving-under-the-influence convictions within the meaning of Vehicle Code sections 23550 and 23550.5.

The complaint alleged that defendant committed his current offense, a violation of Vehicle Code section 23152, subdivision (b), on July 14, 2002. The complaint alleged three priors, two of which defendant admitted and the third was dismissed in exchange for defendant's plea. The two priors defendant admitted were alleged in the accusatory pleading as follows:

"Date of Offense: 6/28/99; Conviction Date: 11/16/99; Vehicle Code Section: Driving-under-the-influence; Court: Reno Justice Court, Nevada; Docket No.: 747147;

"Date of Offense: 2/8/98; Conviction Date: 5/21/98; Vehicle Code Section: Driving-under-the-influence; Court: Reno Justice Court, Nevada; Docket No.: 039995-98." (Italics omitted.)

Defendant challenged use of the prior convictions, in part, because the right to a jury trial was not available in the Nevada proceedings. The magistrate agreed, striking the prior conviction allegations from the complaint.

The People sought review. The superior court reversed the magistrate's order, finding the prior convictions were validly used for purposes of enhancement, and reinstated the prior allegations.

Defendant thereafter entered his negotiated plea, admitting two of the priors, with the understanding that the court would issue a certificate of probable cause in order to raise the issue of use of the priors on appeal.

In challenging the priors, defendant submitted exhibits in support of his motion to declare use of the priors unconstitutional. In opposition to defendant's motion, the prosecutor stated that "[a]ll prior [Nevada] convictions resulted from guilty pleas by the defendant, the complete record from each

are [*sic*] in evidence before the court." The record on appeal does not include any other exhibits to support the priors. Defendant raises no challenge to the record of conviction supporting the priors. The parties appear to have relied upon the exhibits attached to defendant's motion. We do the same.

In 1998, defendant was convicted of violating Washoe County Code section 70.3865,[2] which is punishable pursuant to Nevada Revised Statutes (NRS) section 484.3792. In 1999, defendant was convicted of violating NRS section 484.379[3] which is also punishable pursuant to NRS section 484.3792.[4] Washoe County Code section 70.3865 and NRS section 484.379 set forth the offense of driving under the influence of intoxicating liquor or controlled substance. NRS section 484.3792 sets forth the penalties for the foregoing violations. They are misdemeanors.

## DISCUSSION

Relying, in part, upon *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*) and *Tighe, supra,* 266 F.3d 1187, defendant renews his claim that the Sixth Amendment bars the use of his Nevada prior convictions for enhancement purposes.[5] Defendant argues, "Since he was not accorded the right to a jury trial in those earlier out-of-state [Nevada] proceedings, the resulting convictions could not be used to enhance his sentence in the case at hand." We disagree.

Here, defendant pled no contest to a violation of Vehicle Code section 23152 and admitted two Nevada priors. When defendant committed the underlying offense on July 14, 2002, Vehicle Code section 23546 provided: "(a) If any person is convicted of a violation of Section 23152 and the offense occurred within seven years of two separate violations of Section 23103, as specified in Section 23103.5, which occurred on or after January 1, 1982, 23152, or 23153, or any combination thereof, which resulted in convictions, that person shall be punished by imprisonment in the county jail for not less than 120 days nor more than one year and by a fine of not less than three hundred ninety dollars ($390) nor more than one thousand dollars ($1,000). The person's privilege to operate a motor vehicle shall be revoked as required in paragraph (5) of subdivision (a) of Section 13352. The court shall require the person to surrender his or her driver's license to the court in accordance with Section 13550. [¶] (b) Any person convicted of a violation of

---

[2] See Appendix I.
[3] See Appendix II.
[4] See Appendix III.
[5] Defendant does not contend that the Nevada convictions cannot be used because they are invalid based on unconstitutional procedures in that state.

Section 23152 punishable under this section shall be designated as an habitual traffic offender for a period of three years, subsequent to the conviction. The person shall be advised of this designation pursuant to subdivision (b) of Section 13350." (Stats. 1999, ch. 22, § 34.)

Vehicle Code section 23626 provides, in relevant part, as follows: "A conviction of an offense in any state, territory, or possession of the United States, . . . which, if committed in this state, would be a violation of Section 23152 or 23153 of this code, . . . is a conviction of Section 23152 or 23153 of this code . . . ."

Defendant does not dispute that his 1998 and 1999 Nevada convictions involved conduct that would constitute violations of Vehicle Code section 23152. The People do not dispute that defendant was not entitled to a jury trial under Nevada law when the prior convictions were adjudicated.

 "[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged . . . , submitted to a jury, and proven beyond a reasonable doubt." (*Jones v. United States* (1999) 526 U.S. 227, 243, fn. 6 [143 L.Ed.2d 311, 326, 119 S.Ct. 1215]; see also *Apprendi, supra,* 530 U.S. at p. 489 [147 L.Ed.2d at p. 455].) "The Fourteenth Amendment commands the same answer" for purposes of a state statute. (*Apprendi, supra,* 530 U.S. at p. 476 [147 L.Ed.2d at p. 446].)

In *Tighe, supra,* 266 F.3d 1187, a divided panel of the Ninth Circuit Court of Appeals held that the trial court could not use a prior nonjury juvenile adjudication to increase the penalty beyond that authorized for the current offense alone, finding that *Apprendi*'s "prior conviction" exception is limited to those convictions "obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt." (*Tighe, supra,* at pp. 1194, 1197.)[6] The *Tighe* dissent concluded that because "a juvenile receives all the process constitutionally due at the juvenile stage, there is no *constitutional* problem (on which *Apprendi* focused) in using that adjudication to support a later sentencing enhancement." (*Id.* at p. 1200 (dis. opn. of Brunetti, J.).)

 "Decisions of lower federal courts interpreting federal law are not binding on state courts. [Citation.]" (*People v. Williams* (1997) 16 Cal.4th 153, 190 [66 Cal.Rptr.2d 123, 940 P.2d 710].) Subsequent federal court decisions from other circuits have criticized the *Tighe* majority opinion as poorly

---

[6] Majority opinion by Judge Fisher with Judge B. Fletcher concurring. Dissenting opinion by Judge Brunetti.

reasoned and wrongly decided. (See *U.S. v. Burge* (11th Cir. 2005) 407 F.3d 1183, 1190; *U.S. v. Jones* (3rd Cir. 2003) 332 F.3d 688, 695–696; *U.S. v. Smalley* (8th Cir. 2002) 294 F.3d 1030, 1032–1033 ["juvenile adjudications, like adult convictions, are so reliable that due process of law is not offended by . . . an exemption [from *Apprendi*'s general rule]" since "juvenile defendants have the right to notice, the right to counsel, the right to confront and cross-examine witnesses, and the privilege against self-incrimination" and "[a] judge in a juvenile proceeding, moreover, must find guilt beyond a reasonable doubt before he or she can convict"].)

Courts of Appeal in this state have rejected the *Tighe, supra,* 266 F.3d 1187, majority opinion as well (see *People v. Superior Court (Andrades)* (2003) 113 Cal.App.4th 817, 830–834 [7 Cal.Rptr.3d 74]; *People v. Lee* (2003) 111 Cal.App.4th 1310, 1315–1316 [4 Cal.Rptr.3d 642]; *People v. Smith* (2003) 110 Cal.App.4th 1072, 1075–1079 [1 Cal.Rptr.3d 901]; *People v. Bowden* (2002) 102 Cal.App.4th 387, 393–394 [125 Cal.Rptr.2d 513] *(Bowden)*).

In *Bowden, supra,* 102 Cal.App.4th 387, the defendant contended "that because a person previously tried as a juvenile had no right to a jury trial in juvenile court, the prior juvenile adjudication cannot constitutionally be treated as a prior conviction for the purpose of the Three Strikes law." (*Id.* at p. 391.) *Bowden* rejected the defendant's contention for the following reasons:

"Prior to *Apprendi* and *Tighe,* this contention was rejected by *People v. Fowler* [(1999)] 72 Cal.App.4th 581 [84 Cal.Rptr.2d 874]. The Three Strikes law includes designated prior juvenile court adjudications as strikes. [Citations.] In *Fowler* the defendant argued, like Tennant, that a prior juvenile court adjudication cannot be used as a strike because the juvenile had no right to a jury trial when the juvenile offense was adjudicated. The *Fowler* court rejected the argument. It stated, 'It is settled that while certain constitutional protections enjoyed by adults accused of crimes also apply to juveniles (e.g., notice of charges, right to counsel, privilege against self-incrimination, right to confrontation and cross-examination, double jeopardy, proof beyond a reasonable doubt), ". . . the Constitution does not mandate elimination of all differences in the treatment of juveniles." [Citation.] Thus, juveniles enjoy no state or federal due process or equal protection right to a jury trial in delinquency proceedings. [Citations.] [¶] . . . [¶] By enacting the three strikes law, the Legislature has . . . simply . . . said that, under specified circumstances, a prior juvenile adjudication may be used as evidence of past criminal conduct for the purpose of increasing an adult defendant's sentence. . . . Since a juvenile constitutionally—and reliably [citation]—can be adjudicated a delinquent without being afforded a jury trial, there is no constitutional impediment to using that juvenile adjudication to increase a defendant's sentence following a later adult conviction.' [Citation.]

"In *Apprendi v. New Jersey, supra*, 530 U.S. 466, a jury convicted the defendant of possession of a firearm, a second degree offense punishable by five to 10 years' imprisonment, and the sentencing judge, by a preponderance of evidence, found as a sentencing factor that the defendant committed the offense as a racial hate crime, which increased the punishment to 10 to 20 years, the same as if the jury had convicted the defendant of a third degree offense. The Supreme Court held: '*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' [Citation.] The court *excepted* the fact of a prior conviction from this holding, because of the long tradition allowing sentencing judges to consider the defendant's recidivism. [Citation.]

"In *U.S. v. Tighe, supra*, 266 F.3d 1187, under a federal criminal sentencing statute, a defendant's having suffered prior convictions increased the prison term beyond the statutory maximum. The prior convictions were not required to be pleaded in a charging indictment, were not required to be proved beyond a reasonable doubt, and were not triable by a jury. One of the defendant's three prior convictions was a juvenile adjudication. Even though *Apprendi* excepted proof of prior convictions from its rule, a two-to-one majority of a Ninth Circuit Court of Appeals panel held that when the Supreme Court said 'prior conviction' in *Apprendi*, it meant only a prior adult conviction. The *Tighe* majority concluded that in order to allow a sentencing judge in the current case to increase a sentence above the statutory maximum, based on a prior conviction and without notice, proof beyond a reasonable doubt or a jury trial *of the prior* in the current case, the prior conviction must itself have involved notice, proof beyond a reasonable doubt, *and a right to jury trial*. [Citation.]

"*Apprendi* and *Tighe* have no direct application here. In both of those cases the fact that increased the defendant's sentence above the statutory maximum was not tried or proved by the usual criminal standards *in the trial of the current case*, but was a factual finding solely by a sentencing judge ostensibly as a sentencing consideration. This is not at all like proof of a strike under California's Three Strikes law. Under the Three Strikes law a qualifying prior conviction must, *in the current case*, be pleaded and proved [citation], beyond a reasonable doubt [citations], and the defendant has a statutory right to a jury trial, at least on the issue whether the defendant suffered the prior conviction [citations]. Because the context is so different, *Apprendi* and *Tighe* do not apply here. This is apparent from a footnote in *Tighe* distinguishing statutes under which prior convictions are determined by a jury or tried in the manner of elements of a crime. [Citation.]

"But even in its own context (prior convictions determined solely by a judge as a sentencing consideration), the *Tighe* majority opinion is unpersuasive, and we decline to follow or extend its reasoning in the context of the Three Strikes law. We agree with the *Tighe* dissent that the *Tighe* majority made a 'quantum leap' from certain language in a Supreme Court opinion and erroneously concluded prior juvenile adjudications are not prior convictions. [Citation.] As noted *ante*, *Apprendi excepts* prior convictions from its rule. [Citation.] The *Tighe* majority [citation] focused on language in *Jones v. United States* (1999) 526 U.S. 227, 249 [143 L.Ed.2d 311, 119 S.Ct. 1215], a precursor of *Apprendi*, that stated, 'one basis' for distinguishing prior convictions is, 'a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt and jury trial guarantees.' The *Tighe* majority concluded this was intended to state a 'fundamental triumvirate of procedural protections intended to guarantee the reliability of criminal convictions.' [Citation.] The *Tighe* majority then concluded that since juvenile adjudications do not involve a right to jury trial, they cannot be included within the *Apprendi* exception for prior convictions. [Citation.]

"We agree with the *Tighe* dissent that this language in *Jones* does not support such a broad conclusion. The dissent stated, 'In my view, the language in *Jones* stands for the basic proposition that Congress has the constitutional power to treat prior convictions as sentencing factors subject to a lesser standard of proof because the defendant presumably received all the process that was due when he was convicted of the predicate crime. For adults, this would indeed include the right to a jury trial. For juveniles, it does not. Extending *Jones'* logic to juvenile adjudications, when a juvenile receives all the process constitutionally due at the juvenile stage, there is no *constitutional* problem (on which *Apprendi* focused) in using that adjudication to support a later sentencing enhancement.' [Citation.]

"A unanimous panel of the Eighth Circuit Court of Appeals also refused to follow the *Tighe* majority opinion in *U.S. v. Smalley* (8th Cir. 2002) 294 F.3d 1030, 1032–1033. It concluded that all the other procedural protections available in a juvenile court trial of a criminal charge are ample 'to ensure the reliability that *Apprendi* requires,' and the lack of a jury trial does not undermine the reliability of juvenile adjudications in any significant way. [Citation.] The court cited *McKeiver v. Pennsylvania* [(1971)] 403 U.S. 528, 547 [29 L.Ed.2d 647, 91 S.Ct. 1976], where the Supreme Court stated, 'The imposition of the jury trial on the juvenile court system would not strengthen greatly, if at all, the fact-finding function.'

"This is the same reasoning and authority cited by the California Court of Appeal in *People v. Fowler, supra*, 72 Cal.App.4th 581, 586, stating, 'Since a juvenile constitutionally—and reliably [citing *McKeiver, supra*, 403 U.S.

528]—can be adjudicated a delinquent without being afforded a jury trial, there is no constitutional impediment to using that juvenile adjudication to increase a defendant's sentence following a later adult conviction.'

"We conclude that *Tighe* does not apply nor should its reasoning be extended to this case and in the context of the Three Strikes law. *Fowler* is still good law notwithstanding *Tighe*." (*Bowden, supra*, 102 Cal.App.4th at pp. 391–394, fn. omitted.)

■ We respectfully decline to follow the *Tighe, supra*, 266 F.3d 1187, majority opinion and follow the reasoning of *Bowden*. Similar reasoning applicable to the use of a prior juvenile adjudication to which no right to a jury trial attached applies here to the use of a prior Nevada misdemeanor driving-under-the-influence conviction to which no right to a jury trial attached. Nevada's misdemeanor driving-under-the-influence statute provides for a maximum prison term of six months or less and requires no jury trial since the offense is considered a petty offense (NRS § 484.3792, subd. 1(a)(2) & (b)(1)(I); see Appen. III, *post*; *Blanton v. North Las Vegas* (1989) 489 U.S. 538 [103 L.Ed.2d 550, 109 S.Ct. 1289]). ■ "If a statute authorizes a sentence of six months or less . . . the sentence is 'presume[d] for the purpose of the Sixth Amendment' (*Blanton, supra*, 489 U.S. at p. [543] [103 L.Ed.2d at p. 556]) to be 'petty' rather than 'serious.' In that situation, no right to jury trial arises unless something more—e.g., a fine of sufficient magnitude—makes the offense 'serious.' (See *id.*, at p[p. 543–545] [103 L.Ed.2d at p. 557].)" (*Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1242 [265 Cal.Rptr. 144, 783 P.2d 731], fn. omitted.) The California Constitution, on the other hand, guarantees a jury trial right on all offenses but infractions. (Cal. Const., art. I, § 16.) "In contrast to the federal jury trial guaranty, which draws a distinction between 'serious' and 'petty' criminal offenses and requires a jury trial only for those offenses which fall into the 'serious' category, the right to trial by jury embodied in the California Constitution extends to so-called 'petty' as well as to 'serious' criminal offenses, i.e., to all misdemeanors as well as to all felonies. Under the California Constitution, only infractions not punishable by imprisonment [former Pen. Code] (§ 19c) [now Pen. Code, § 19.6] are not within the jury trial guaranty. [Citation.]" (*Mitchell, supra*, 49 Cal.3d at p. 1242.)

Citing *People v. Andrews* (1989) 49 Cal.3d 200 [260 Cal.Rptr. 583, 776 P.2d 285] and *People v. Johnson* (1991) 233 Cal.App.3d 1541 [285 Cal.Rptr. 394], the Attorney General notes that California courts have upheld the use of a prior conviction from another jurisdiction despite procedural or other differences (*Andrews, supra*, 49 Cal.3d at pp. 221–224 [lack of a fitness hearing to determine whether juvenile should be tried as an adult did not bar use of Alabama conviction for murder as special circumstance in California murder

prosecution]; *Johnson, supra,* 233 Cal.App.3d at pp. 1549–1550 [use of Nevada prior conviction for attempted sexual assault as a prior serious felony enhancement despite the lack of the same procedural protections]; see also *People v. Trevino* (2001) 26 Cal.4th 237 [109 Cal.Rptr.2d 567, 27 P.3d 283] [age of defendant when convicted did not bar use of prior Texas murder conviction as special circumstance]; *People v. Green* (2000) 81 Cal.App.4th 463 [96 Cal.Rptr.2d 811] [lack of *Boykin-Tahl*[7] did not bar use of Texas prior conviction to enhance defendant's sentence]).

■ The record shows without dispute that when defendant was convicted in Nevada in 1998 and 1999 by guilty pleas, he had the rights to notice, to counsel and to confront and cross-examine witnesses, the privilege against self-incrimination, and his guilt had to be proven beyond a reasonable doubt. *Blanton, supra,* 489 U.S. 538, made clear that the United States Constitution did not mandate a jury trial for a petty offense. A Nevada misdemeanor driving-under-the-influence offense is a petty offense. Defendant received then all the process constitutionally due. We conclude defendant's prior Nevada misdemeanor driving-under-the-influence convictions were obtained in accordance with the law and were properly used by the trial court to enhance defendant's sentence for the current underlying driving-under-the-influence offense.

## DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Davis, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 13, 2006, S146870. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.

---

[7] *Boykin v. Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].

## APPENDIX I

When defendant committed his offense on February 8, 1998, Washoe County Code section 70.3865 provided:

"1. It is unlawful for any person who:

"(a) Is under the influence of intoxicating liquor;

"(b) Has 0.10 percent or more by weight of alcohol in his blood; or

"(c) Is found by measurement within 2 hours after driving or being in actual physical control of a vehicle to have 0.10 percent or more by weight of alcohol in his blood, to drive or be in actual physical control of a vehicle on a road or highway in the County of Washoe or on premises to which the public has access within the County of Washoe.

"2. It is unlawful for any person who is an habitual user of or under the influence of any controlled substance, or who is under the combined influence of intoxicating liquor and a controlled substance, or any person who inhales, ingests, applies or otherwise uses any chemical, poison or organic solvent, or any compound or combination of any of these, to a degree which renders him incapable of safely driving or exercising actual physical control of a vehicle to drive or be in actual physical control of a vehicle on a road or highway in the County of Washoe or on premises to which the public has access within the County of Washoe. The fact that any person charged with a violation of this subsection is or has been entitled to use that drug under the laws of this state is not a defense against any charge of violating this subsection.

"3. If consumption is proven by a preponderance of the evidence, it is an affirmative defense under paragraph (c) of subsection 1 that the defendant consumed a sufficient quantity of alcohol after driving or being in actual physical control of the vehicle, and before his blood was tested, to cause the alcohol in his blood to equal or exceed 0.10 percent. A defendant who intends to offer this defense at a trial or preliminary hearing must, not less than 14 days before the trial or hearing or at such other time as the court may direct, file and serve on the prosecuting attorney a written notice of that intent.

"4. Any person convicted of violating the provisions of this section must be sentenced and must serve a term of confinement in the manner provided in chapter 484 of NRS for a violation of NRS 484.379.

"5. The provisions of this section apply only to that conduct which constitutes a misdemeanor under chapter 484 of NRS. Nothing contained in this section prevents the prosecution and conviction of a person under the NRS for a gross misdemeanor or felony based upon conduct which also violates the provisions of this section."

## APPENDIX II

When defendant committed his offense on June 28, 1999, NRS section 484.379 provided:

"1. It is unlawful for any person who:

"(a) Is under the influence of intoxicating liquor;

"(b) Has 0.10 percent or more by weight of alcohol in his blood; or

"(c) Is found by measurement within 2 hours after driving or being in actual physical control of a vehicle to have 0.10 percent or more by weight of alcohol in his blood, to drive or be in actual physical control of a vehicle on a highway or on premises to which the public has access.

"2. It is unlawful for any person who:

"(a) Is under the influence of a controlled substance;

"(b) Is under the combined influence of intoxicating liquor and a controlled substance; or

"(c) Inhales, ingests, applies or otherwise uses any chemical, poison or organic solvent, or any compound or combination of any of these, to a degree which renders him incapable of safely driving or exercising actual physical control of a vehicle, to drive or be in actual physical control of a vehicle on a highway or on premises to which the public has access. The fact that any person charged with a violation of this subsection is or has been entitled to use that drug under the laws of this state is not a defense against any charge of violating this subsection.

"3. It is unlawful for any person to drive or be in actual physical control of a vehicle on a highway or on premises to which the public has access with an amount of a prohibited substance in his blood or urine that is equal to or greater than: [table of amounts of prohibited substances].

"(4) If consumption is proven by a preponderance of the evidence, it is an affirmative defense under paragraph (c) of subsection 1 that the defendant consumed a sufficient quantity of alcohol after driving or being in actual physical control of the vehicle, and before his blood was tested, to cause the alcohol in his blood to equal or exceed 0.10 percent. A defendant who intends to offer this defense at a trial or preliminary hearing must, not less than 14 days before the trial or hearing or at such other time as the court may direct, file and serve on the prosecuting attorney a written notice of that intent." (NRS Stats. 1999, ch. 622, § 23.)

## APPENDIX III

When defendant committed his offenses in 1998 and 1999, NRS section 484.3792 provided:

"1. A person who violates the provisions of NRS 484.379:

"(a) For the first offense within 7 years, is guilty of a misdemeanor. Unless he is allowed to undergo treatment as provided in NRS 484.37937, the court shall:

"(1) Except as otherwise provided in subsection 6, order him to pay tuition for an educational course on the abuse of alcohol and controlled substances approved by the department and complete the course within the time specified in the order, and the court shall notify the department if he fails to complete the course within the specified time;

"(2) Unless the sentence is reduced pursuant to NRS 484.37937, sentence him to imprisonment for not less than 2 days nor more than 6 months in jail, or to perform 96 hours of work for the community while dressed in distinctive garb that identifies him as having violated the provisions of NRS 484.379; and

"(3) Fine him not less than $200 nor more than $1,000.

"(b) For a second offense within 7 years, is guilty of a misdemeanor. Unless the sentence is reduced pursuant to NRS 484.3794, the court:

"(1) Shall sentence him to:

"(I) Imprisonment for not less than 10 days nor more than 6 months in jail; or

"(II) Residential confinement for not less than 10 days nor more than 6 months, in the manner provided in NRS 4.376 to 4.3768, inclusive, or 5.0755 to 5.078, inclusive;

"(2) Shall fine him not less than $500 nor more than $1,000;

"(3) Shall order him to perform not less than 100 hours, but not more than 200 hours, of work for the community while dressed in distinctive garb that identifies him as having violated the provisions of NRS 484.379, unless the court finds that extenuating circumstances exist; and

"(4) May order him to attend a program of treatment for the abuse of alcohol or drugs pursuant to the provisions of NRS 484.37945.

"A person who willfully fails or refuses to complete successfully a term of residential confinement or a program of treatment ordered pursuant to this paragraph is guilty of a misdemeanor.

"(c) For a third or subsequent offense within 7 years, is guilty of a category B felony and shall be punished by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years, and shall be further punished by a fine of not less than $2,000 nor more than $5,000. An offender so imprisoned must, insofar as practicable, be segregated from offenders whose crimes were violent and, insofar as practicable, be assigned to an institution or facility of minimum security.

"2. An offense that occurred within 7 years immediately preceding the date of the principal offense or after the principal offense constitutes a prior offense for the purposes of this section when evidenced by a conviction, without regard to the sequence of the offenses and convictions. The facts concerning a prior offense must be alleged in the complaint, indictment or information, must not be read to the jury or proved at trial but must be proved at the time of sentencing and, if the principal offense is alleged to be a felony, must also be shown at the preliminary examination or presented to the grand jury.

"3. A person convicted of violating the provisions of NRS 484.379 must not be released on probation, and a sentence imposed for violating those provisions must not be suspended except, as provided in NRS 4.373, 5.055, 484.37937 and 484.3794, that portion of the sentence imposed that exceeds the mandatory minimum. A prosecuting attorney shall not dismiss a charge of violating the provisions of NRS 484.379 in exchange for a plea of guilty, guilty but mentally ill or nolo contendere to a lesser charge or for any other reason unless he knows or it is obvious that the charge is not supported by probable cause or cannot be proved at the time of trial.

"4. A term of confinement imposed pursuant to the provisions of this section may be served intermittently at the discretion of the judge or justice of the peace, except that a person who is convicted of a second or subsequent offense within 7 years must be confined for at least one segment of not less than 48 consecutive hours. This discretion must be exercised after considering all the circumstances surrounding the offense, and the family and employment of the offender, but any sentence of 30 days or less must be served within 6 months after the date of conviction or, if the offender was sentenced pursuant to NRS 484.37937 or 484.3794, and the suspension of his

sentence was revoked, within 6 months after the date of revocation. Any time for which the offender is confined must consist of not less than 24 consecutive hours.

"5. Jail sentences simultaneously imposed pursuant to this section and NRS 483.560 or 485.330 must run consecutively.

"6. If the person who violated the provisions of NRS 484.379 possesses a driver's license issued by a state other than the state of Nevada and does not reside in the state of Nevada, in carrying out the provisions of subparagraph (1) of paragraph (a) or (b) of subsection 1, the court shall:

"(a) Order the person to pay tuition for and submit evidence of completion of an educational course on the abuse of alcohol and controlled substances approved by a governmental agency of the state of his residence within the time specified in the order; or

"(b) Order him to complete an educational course by correspondence on the abuse of alcohol and controlled substances approved by the department within the time specified in the order, and the court shall notify the department if the person fails to complete the assigned course within the specified time.

"7. If the defendant was transporting a person who is less than 15 years of age in the motor vehicle at the time of the violation, the court shall consider that fact as an aggravating factor in determining the sentence of the defendant.

"8. As used in this section, unless the context otherwise requires, 'offense' means a violation of NRS 484.379 or 484.3795 or a homicide resulting from the driving of a vehicle while under the influence of intoxicating liquor or a controlled substance, or the violation of a law of any other jurisdiction that prohibits the same or similar conduct." (NRS 1997, ch. 466, § 4.)