Filed 3/7/25  P. v. Fuller CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>AHMAD FULLER, SR.,<br><br>   Defendant and Appellant. | C099595<br><br>(Super. Ct. No. STKCRFECOD20200010153) |

A jury convicted defendant Ahmad Fuller, Sr., of robbery, kidnapping, making a criminal threat, possession of a firearm by a convicted felon, possession of ammunition by a convicted felon, carrying a loaded unregistered firearm in public, inflicting corporal injury upon the mother of his child, unlawful taking of a vehicle, contempt of court, possession of methamphetamine and a firearm by a convicted felon, possession of

1

methamphetamine for sale, and acquiring personal identifying information with the intent to defraud. The trial court sentenced him to an aggregate determinate prison term of 13 years eight months.

On appeal, defendant contends (1) the trial court committed evidentiary error and violated defendant's constitutional rights when it inadvertently sent his rap sheet into the jury deliberation room, (2) the foregoing error also violated the California Racial Justice Act of 2020 (Racial Justice Act), (3) the statutes prohibiting convicted felons from possessing firearms and ammunition violate the Second Amendment to the United States Constitution, (4) the trial court erred in instructing the jury with CALCRIM No. 850 on the use of expert testimony regarding intimate partner battering, and (5) cumulative prejudice requires reversal.

We conclude (1) defendant's evidentiary and constitutional challenges pertaining to the rap sheet were not forfeited but he has not established reversible error on those grounds; (2) his Racial Justice Act claim is forfeited and his alternative assertion of ineffective assistance of counsel fails for lack of prejudice; (3) the Second Amendment does not prevent a conviction for unlawful possession of a firearm or ammunition by a convicted felon; (4) the trial court did not err in instructing with CALCRIM No. 850; and (5) there is no cumulative prejudice to assess.

We will affirm the judgment.

BACKGROUND

Defendant and S.B. were involved in a romantic relationship for about seven years. They had one child together. The relationship ended about a year before the events giving rise to defendant's convictions.

In September 2020, in violation of a domestic violence restraining order, defendant followed S.B. through Stockton, tailgating her until she pulled over to see what he wanted. Defendant got out of his car and got into S.B.'s front passenger seat. He then placed a handgun under the passenger seat, adjusted another handgun that was in his

2

waist band, and told S.B. to drive. S.B. was afraid and followed his directions. Their first stop was a Bank of America in Stockton. At the bank, defendant asked S.B. how many debit or credit cards she had. S.B. said she had only one, even though she had several others in her back pocket. Defendant did not believe her and reached into her pocket to retrieve the other cards. S.B. tried to stop him, but he grabbed her by the neck, struck her multiple times, and took the cards and her car keys. He used one of the cards to withdraw money from the ATM.

At defendant's direction, S.B. drove him to several other locations, including another Bank of America in Manteca. At some point defendant told S.B. he was going to have her killed because she was the reason he had been locked up and was on probation. Eventually, S.B. said she needed to use a restroom. They drove to Walmart where S.B. locked herself in the restroom. Defendant left the store and drove away in S.B.'s car. Police arrested defendant about a week later.

During defendant's arrest, officers removed a loaded and operational 9-millimeter gun from his waistband. The gun had a polymer frame with no serial number, although the Glock 17 slide did have a serial number. Defendant also had four $200 Visa gift cards in his possession. When officers searched defendant's motel room, they found various items of merchandise, including power tools still in their packaging that defendant had purchased from Home Depot using an Employment Development Department (EDD) debit card that did not belong to him. The room also contained driver's licenses, social security cards, and EDD debit cards in the names of various people, as well as notebooks containing credit card numbers and personal identifying information. Defendant's motel room also contained a digital scale and methamphetamine packaged for sale.

Three jailhouse phone calls between defendant and S.B. indicated that defendant had dissuaded S.B. from testifying at trial, and S.B.'s prior statements were admitted into evidence for their truth. The statements were admitted through officer testimony and the admission of bodycam footage from the officer who spoke to S.B. in the Walmart

3

restroom. The jailhouse phone calls were also admitted into evidence to show consciousness of guilt.

Additional background will be set forth in the discussion portion of this opinion as relevant to the contentions on appeal.

## DISCUSSION

### I

Defendant contends we must reverse each of his convictions because the trial court committed evidentiary error and violated his constitutional rights by inadvertently sending his rap sheet into the jury deliberation room. The People argue defendant forfeited these claims and, in any event, the error does not require reversal. We decline to find forfeiture, but defendant's constitutional rights were not violated by the error, and reversal is not required because defendant has not shown a reasonable probability of a more favorable result had the error not occurred.

### A

S.B. did not testify at trial because defendant procured her unavailability as a witness. He did so by threatening her during three jailhouse phone calls. The People moved to admit her prior statements about defendant's crimes under the doctrine of forfeiture by wrongdoing. During a hearing on the matter, which was held outside the presence of the jury, the People adduced testimony from the District Attorney's investigator regarding the investigator's efforts to obtain S.B.'s presence as a witness. Among other things, the investigator testified she obtained defendant's rap sheet to show there was a pending case against him with the same victim. The rap sheet was marked as People's Exhibit No. 66 (Exhibit 66) during the hearing. At the conclusion of the People's case, Exhibit 66 was admitted into evidence. However, that exhibit was never intended to be given to the jury during deliberations.

The jury began deliberations on June 1, 2021. Near the end of the next day, the jury sent the trial court a note indicating that it had reached a verdict on all but one count

4

and asking for guidance. The following morning, the trial court consulted with counsel regarding a response and also stated that the prosecutor had brought an issue to the trial court's attention: Exhibit 66 had inadvertently been included in the exhibits given to the jury.

The trial court indicated it would not remove Exhibit 66 from the deliberation room after the jury had indicated it had reached a verdict on 12 of the 13 counts, but it asked for defense counsel's thoughts. Defense counsel stated that he "would like to find out if they even looked at it," but added: "That's an issue that can be addressed on appeal. I would like to find out if they ever looked at it. . . . If they had, if it had any impact on them. [¶] On the other hand, that is something that I can raise with the attorney on appeal, . . . let them figure out how they want to handle it. That means somebody will have to contact jurors." The trial court responded: "I will leave it to them. There's a lot of prohibitions about contacting jurors about their mental process and all." Defense counsel agreed there were prohibitions and added: "I don't think that you could destroy a verdict unnecessarily because they said I saw it, and it had – I don't think you can get to what impact did it have. I don't think you can ask that question at all." The trial court agreed. Defense counsel then stated he believed the jury could be asked whether they saw it. The trial court responded: "Well, that's part of the evidence." Defense counsel added he was "willing to let an appellate court speculate."

The trial court then stated: "As I indicated, we will let the issue lay. It's evidence. It's in there, good or bad. You have to put it in context. There's voluminous evidence in this case. There's jail tapes. There's body cam. There's ATM stuff. There's a ton of evidence. So to say one small piece here will screw up the whole thing, it's extremely unlikely. That's based on my experience, cases that have some kind of evidentiary issues later. They said they decided; we will go over the counts. We will just wait to hear from them." A short time later, the jury returned a verdict on all counts.

5

B

"When, as in this case, a jury innocently considers evidence it was inadvertently given, there is no misconduct.  The situation is the same as any in which the court erroneously admits evidence. . . .  There has been merely 'an error of law . . . such as . . . an incorrect evidentiary ruling.'  [Citation.]  Such error is reversible only if it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error."  (*People v. Cooper* (1991) 53 Cal.3d 771, 836 (*Cooper*); *People v. Anderson* (2018) 5 Cal.5th 372, 421.)

For example, in *Cooper*, "a transcript never intended for the jury's eyes was inadvertently marked as an exhibit, admitted, and sent to the jury room."  (*People v. Gamache* (2010) 48 Cal.4th 347, 397-398.)  This was deemed "ordinary error" (*id*. at p. 398) and did not require reversal under the reasonable probability standard for assessing prejudice because "[t]he result of the exhibit's inadvertent admission was relatively minor" and "the evidence established [the] defendant's guilt overwhelmingly." (*Cooper, supra*, 53 Cal.3d at p. 836.)  Similarly, in *People v. Clair* (1992) 2 Cal.4th 629 (*Clair*), "a court clerk inadvertently supplied jurors with an unredacted audiotape and transcript of statements by the defendant to the police," portions of which "had been excluded by the court as irrelevant and unduly prejudicial."  (*Gamache,* at p. 398.) Relying on *Cooper*, the court concluded "all that appears is ordinary error" and reversal was not required because there was no "reasonable probability that an outcome more favorable to the defendant would have resulted" in the absence of the error.  (*Clair,* at p. 668.)

Here, as in *Cooper* and *Clair*, the jury was inadvertently given defendant's rap sheet.  The error is conceded.  Defendant, however, argues it amounted to more than ordinary error.  Relying on several federal cases, defendant claims he "has effectively lost the rights of confrontation, cross-examination, and the assistance of counsel with regard to the extraneous information" considered by the jury.  (*Dickson v. Sullivan* (9th Cir.

6

1988) 849 F.2d 403, 406; see also *Marino v. Vasquez* (9th Cir. 1987) 812 F.2d 499, 504-505; *United States v. Littlefield* (9th Cir. 1985) 752 F.2d 1429, 1432; *United States v. Vasquez* (9th Cir. 1979) 597 F.2d 192, 193.) But those federal cases involved jury misconduct and applied a heightened standard for assessing harmless error, i.e., whether there was " 'a reasonable possibility that the extrinsic material *could* have affected the verdict.' [Citation.]" (*Marino,* at p. 504.) They did not draw a distinction between actual jury misconduct, such as intentionally bringing outside information into their deliberations (*Littlefield,* at p. 1430), and innocent consideration of evidence inadvertently given to the jury by the court (*Vasquez,* at p. 193 [clerk-bailiff inadvertently left the court's file in the deliberation room]).

Decisions of lower federal courts are not binding on this court. (*People v. Palmer* (2006) 142 Cal.App.4th 724, 729.) Decisions of the California Supreme Court are binding authority. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Under *Cooper*, *Clair*, and *Anderson*, the jury's inadvertent receipt of defendant's rap sheet in this case was not misconduct, but rather ordinary error akin to the erroneous admission of evidence. Thus, in order to reverse for this error, defendant must show a reasonable probability of a more favorable outcome. We turn to that analysis now.

D

The case against defendant was very strong. With respect to the crimes committed against S.B., although she did not testify, her statements to police were admitted into evidence through officer testimony and the bodycam recording. S.B. described a series of events in which defendant chased her through Stockton, got into her car with two handguns, forced her to drive to a bank, assaulted her, threatened her life, took her debit and credit cards, used one of those cards to withdraw money from the ATM, and forced her to drive to other locations. Her presence inside a locked restroom when police arrived, as well as the fear she exhibited while talking to an officer, generally corroborated her statements during that interview. The swelling to her left eye socket

more specifically corroborated her claim that defendant struck her several times while they were at the bank in Stockton. Surveillance footage from the bank also corroborated her claim that defendant used one of her cards to withdraw money from the ATM. S.B. also stated that defendant withdrew about $3,000 and placed it in his sock. The fact that $3,980 was found on defendant at the time of his arrest further corroborated S.B.'s account of events.

Other surveillance footage further corroborated portions of S.B.'s statement to police, including footage from the auto parts store where she said she initially attempted to use the restroom to get away from defendant. Surveillance footage from Walmart also showed S.B. going into the restroom, after which defendant yelled something toward the restroom, adjusted his waistband, and quickly left the store. Two Walmart employees also testified, further corroborating the circumstances.

In addition to the foregoing compelling evidence, the prosecution adduced evidence of defendant's consciousness of guilt in the form of the jailhouse phone calls that dissuaded S.B. from testifying against him. S.B.'s statements also established their former romantic relationship, including defendant's status as the father of her child. The abusive nature of that relationship was further established by defendant's prior assault conviction and the existence of a domestic violence restraining order that he violated while committing the foregoing crimes.

The foregoing evidence overwhelmingly established that defendant committed the crimes of robbery, kidnapping, making a criminal threat, two counts of possession of a firearm by a convicted felon, infliction of corporal injury upon the mother of his child, unlawful taking of a vehicle, and contempt of court.

There was also strong evidence regarding the crimes committed about a week later. Defendant was arrested when he came out of his motel room and got into a car. Defendant was in possession of $800 in gift cards along with a loaded and operational unregistered firearm. His motel room contained various items of merchandise, including

8

power tools still in their packaging that defendant purchased from Home Depot using an EDD debit card that did not belong to him. The room also contained driver's licenses, social security cards, and EDD debit cards in the names of various people, as well as notebooks containing credit card numbers and personal identifying information. In addition, the motel room contained a digital scale and methamphetamine packaged for sale.

The evidence overwhelmingly established that defendant committed the crimes of possession of a firearm and ammunition by a convicted felon, carrying a loaded unregistered firearm in a vehicle, possession of methamphetamine and a firearm by a convicted felon, possession of methamphetamine for sale, and acquiring personal identifying information with the intent to defraud.

Defendant accurately observes that his rap sheet is lengthy and contains numerous offenses that are similar to the crimes he committed in this case. However, in light of the overwhelming evidence adduced against defendant in this case, we conclude there is no reasonable probability of a more favorable outcome had the jury not received his rap sheet as an exhibit during their deliberations.

## II

Defendant further asserts the inadvertent delivery of the rap sheet to the jury violated the Racial Justice Act. The contention is forfeited.

"In 2020, the California Legislature enacted the Racial Justice Act (Stats. 2020, ch. 317, § 3.5), which went into effect on January 1, 2021. Its declared intent is 'to eliminate racial bias from California's criminal justice system because racism in any form or amount, at any stage of a criminal trial, is intolerable, inimical to a fair criminal justice system, is a miscarriage of justice under Article VI of the California Constitution, and violates the laws and Constitution of the State of California. Implicit bias, although often unintentional and unconscious, may inject racism and unfairness into proceedings similar

9

to intentional bias.' [Citation.]" (*People v. Singh* (2024) 103 Cal.App.5th 76, 109 (*Singh*).)

Defendant argues the following provision of the Racial Justice Act was violated when his rap sheet was accidentally sent into the deliberation room: "The state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin. A violation is established if the defendant proves, by a preponderance of the evidence, any of the following: [¶] (1) The judge, an attorney in the case, a law enforcement officer involved in the case, an expert witness, or juror exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin." (Pen. Code, § 745, subd. (a)(1).)[1] According to defendant, although giving the jury his rap sheet was unintentional, prohibited bias was nevertheless used to obtain his convictions because his rap sheet was considerably longer than it would have been if he were a White man rather than a Black man. As defendant puts the argument: "Because [he] is a Black man, he was exposed to police contacts at a rate four times higher. Because he was accosted at a higher rate compared to Whites, his arrest rate is higher. Because his arrest rate is higher, his [rap] sheet is far lengthier. Because his [rap] sheet is lengthier than if he were born White, the introduction of this sheet led to a conviction partially based on race."

Section 745, subdivision (b) governs the means by which a defendant may allege a violation of subdivision (a). The portion of the provision allowing a defendant to allege a violation of subdivision (a) by filing a motion in the trial court was in effect at the time of defendant's trial. Thus, defendant could have filed such a motion in the trial court, but he did not do so. Effective January 1, 2024, Assembly Bill No. 1118 (2023-2024 Reg. Sess.) (Assembly Bill 1118) amended section 745, subdivision (b) to allow "such a claim

---

[1] Undesignated statutory references are to the Penal Code.

10

to be raised on direct appeal and authorizing a defendant to move to stay the appeal and request remand to the superior court to file a motion." (*Singh, supra*, 103 Cal.App.5th at p. 110; see Stats. 2023, ch. 464, § 1.) However, in that amendment, "the Legislature did not include any language indicating a section 745 claim could be presented on direct appeal *for the first time*." (*People v. Lashon* (2024) 98 Cal.App.5th 804, 812.) In *Singh* and *Lashon*, the appellate courts concluded "that where, as here, the defendant could have but failed to raise his Racial Justice Act claim below, he forfeited the claim and could not raise it for the first time on direct appeal despite Assembly Bill 1118's amendment to section 745 . . . ." (*Singh,* at p. 113; see also *Lashon,* at pp. 811-813.) We adopt their reasoning and reach the same conclusion. Defendant's Racial Justice Act claim is forfeited.

Anticipating this conclusion, defendant argues in the alternative that his trial counsel provided ineffective assistance by failing to preserve this claim for review. However, in order to establish ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. (*In re Tellez* (2024) 17 Cal.5th 77, 88.) We may "begin an ineffective assistance of counsel inquiry with either element and need not address both elements if one is not satisfied." (*Ibid*.) For reasons already expressed, defendant has not shown a reasonable probability of a more favorable outcome had his rap sheet not been accidentally sent into the deliberation room. His assertion of ineffective assistance of counsel therefore fails for lack of prejudice.

### III

Defendant also claims we must reverse his convictions for possession of a firearm and ammunition by a convicted felon and his conviction for carrying a loaded unregistered firearm in public because the statutes criminalizing such possession violate the Second Amendment in light of the United States Supreme

11

Court's decision in *New York State Rifle & Pistol Assn., Inc. v. Bruen* (2022) 597 U.S. 1 (*Bruen*).

In *People v. Alexander* (2023) 91 Cal.App.5th 469, the court applied the analytical framework set forth in *Bruen* and held that the laws prohibiting felons from possessing firearms and ammunition are facially valid. (*Id*. at pp. 473-474.) The court explained that *Bruen* rejected the two-step analytical framework used in *District of Columbia v. Heller* (2008) 554 U.S. 570 and *McDonald v. City of Chicago* (2010) 561 U.S. 742, replacing it with the following test: " 'When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." ' [Citation.] *Bruen* further explained that in assessing whether a modern firearm regulation has a ' "relevantly similar" ' historical analogue [citation], courts should consider 'at least two metrics: how and why the regulations burden a *law-abiding* citizen's right to armed self-defense' [citation]." (*Alexander,* at p. 476, italics added.) *Alexander* also noted that the Supreme Court expressly stated in *Bruen* that the decision was " 'consistent with *Heller* and *McDonald*' [citation], which had recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense. [Citation.]" (*Id*. at p. 477.) *Alexander* concluded that prohibiting a felon from possessing firearms and ammunition did not violate the Second Amendment "because according to *Heller* and *Bruen*, only law-abiding citizens are included among 'the people' whose right to bear arms is protected by the Second Amendment." (*Id*. at p. 478.)

The court in *People v. Odell* (2023) 92 Cal.App.5th 307 reached the same conclusion, adding: "It was no accident the *Bruen* majority repeated the qualifier 'law-abiding' some 13 times. [Citation.] People who have been convicted of a felony are not

12

'law-abiding.' " (*Id.* at p. 317.) We adopt the reasoning of *Alexander* and *Odell*. The statutes prohibiting convicted felons from possessing firearms and ammunition remain constitutional after *Bruen*.

Defendant's challenge to his conviction for carrying a loaded unregistered firearm in public is forfeited for failure to adequately brief the issue. (See *People v. Caro* (2019) 7 Cal.5th 463, 512.) As the People accurately observe, defendant's opening brief "offers no argument on how *Bruen* altered the constitutionality of California's law criminalizing the carrying of a loaded, unregistered firearm in public." In any event, although certain portions of California's licensing regime are unconstitutional after *Bruen*, those aspects of the regime are severable (see *People v. Mosqueda* (2023) 97 Cal.App.5th 399, 409-411, 414), and the specific statute defendant challenges in this appeal, section 25850, is not facially unconstitutional because it is not "unconstitutional in all or at least the generality or great majority of cases." (*In re T.F.-G.* (2023) 94 Cal.App.5th 893, 915-916.)

Nothing in *Bruen* requires this court to reverse defendant's convictions for possession of a firearm and ammunition by a convicted felon or his conviction for carrying a loaded unregistered firearm in public.

IV

Defendant further asserts that the trial court erred by instructing the jury with CALCRIM No. 850 on the use of expert testimony regarding intimate partner battering. Defendant did not object to this instruction in the trial court. His instructional error claim is therefore forfeited unless there was an error that affected his substantial rights, resulting in a miscarriage of justice under *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Anderson* (2007) 152 Cal.App.4th 919, 927.) We conclude there was no error, much less a miscarriage of justice.

As read to the jury in this case, CALCRIM No. 850 stated: "You heard [expert] testimony . . . regarding intimate partner battering. [The expert's] testimony about

13

intimate battery is not evidence that the defendant committed any of the crimes alleged against him. [¶] You may consider this evidence only as follows: [¶] One, in deciding whether or not the alleged victim's conduct was not inconsistent with the conduct of someone who has been abused. Two, in evaluating the believability of the alleged victim's testimony."[2]

Defendant argues the instruction "ran afoul of Evidence Code section 1107," which provides in relevant part: "In a criminal action, expert testimony is admissible by either the prosecution or the defense regarding intimate partner battering and its effects, including the nature and effect of physical, emotional, or mental abuse on the beliefs, perceptions, or behavior of victims of domestic violence, except when offered against a criminal defendant to prove the occurrence of the act or acts of abuse which form the basis of the criminal charge." (Evid. Code, § 1107, subd. (a).) According to defendant, CALCRIM No. 850 incorrectly "told the jury to rely on [the expert's] testimony . . . to evaluate [S.B.'s] believability and conclude the charges were true."

This same argument was rejected in *People v. Brackins* (2019) 37 Cal.App.5th 56, in which the appellate court stated: "Defendant's argument is premised on his claim that the use of [the expert's] testimony to evaluate [the alleged victim's] 'believability' amounted to the use of his testimony to 'prove the occurrence' of the abuse. We reject this premise because it presumes that expert testimony that may be used by the jury to assist it in evaluating the credibility of an alleged abuse victim is prohibited evidence of whether the abuse occurred. If the expert testimony was not related in some way to whether the abuse occurred, it would be irrelevant. Expert testimony may not be

---

**2** Although S.B. did not testify at trial, the trial court informed the jury that "[h]er testimony came in through others," i.e., the officers who testified about her prior statements.

14

improperly used to *directly* determine whether the abuse occurred.  But like much of the other evidence that comes in at a trial, it may be used *indirectly* to assist the jury in evaluating whether the alleged victim's statements are believable."  (*Id.* at p. 71.)  As in *Brackins*, the expert testimony in this case "did not stray into a direct determination as to whether the abuse itself occurred" and "[t]he trial court did not err in instructing the jury that it could use [this] testimony to evaluate [S.B.'s] 'believability.' "  (*Id.* at p. 72; see also *People v. Humphrey* (1996) 13 Cal.4th 1073, 1087 [expert testimony on battered woman syndrome relevant to credibility].)

Defendant also claims that CALCRIM No. 850 "unconstitutionally lowered the prosecution's burden" of proof in violation of his right to due process under the state and federal Constitutions "because it allowed the jury to make the unreasonable inference that because S.B. acted in ways that victims of abuse . . . would act, she was a credible witness, despite evidence to the contrary."  Not so.  The jury was properly instructed regarding the burden of proof in this case.  Moreover, the challenged instruction takes no position on the alleged victim's credibility.  It simply tells the jury it may use the expert testimony in deciding "whether or not" the alleged victim's actions were consistent with an abused person and in evaluating her believability.  "Reasonable jurors would not understand the instruction to mean that if they find the characteristics of intimate partner battering to be satisfied, this indicates that [the alleged victim] was necessarily telling the truth."  (*People v. Sexton* (2019) 37 Cal.App.5th 457, 468.)  The challenged instruction did not tell the jury to find S.B. credible and accordingly did not lower the prosecution's burden of proof.

V

Finally, having rejected each of defendant's claims of error except for the conceded error that the trial court should not have included his rap sheet as part of the exhibits sent into the jury deliberation room, defendant's assertion of

15

cumulative prejudice must also fail.  Stated simply, there is no cumulative prejudice to assess.

DISPOSITION

The judgment is affirmed.


/S/
MAURO, J.


We concur:


/S/
ROBIE, Acting P. J.


/S/
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.